IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MCG

MARCUS CHRISTOPHER GASKINS

~~[struck through]~~    P.O. Box 438

~~[struck through]~~    OPENTON, MD 21113

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

THE FEDERAL ENERGY REGULATORY COMMISSION
AND DEPARTMENT OF ENERGY
"SEE ATTACHED"

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**Complaint for Employment
Discrimination**

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:    ☐ Yes    ☒ No
*(check one)*

17 - cv - 01049

17 CV 1049

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | MARCUS CHRISTOPHER GASKINS |
| Street Address | ~~...~~ PO Box 438 |
| City and County | ~~...~~ ODENTON, ANNE ARUNDEL |
| State and Zip Code | MD 2113 MD 2113 |
| Telephone Number | (443) 216-9851 |
| E-mail Address | mcgaskins@yahoo.com |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | | |
|---|---|---|
| Name | CHERYL L. LAFLEUR | RICK PERRY |
| Job or Title (if known) | ACTING CHAIRMAN, FERC | SECRETARY of DOE |
| Street Address | 888 FIRST STREET, NE | 1000 INDEPENDENCE AVENUE, SW |
| City and County | WASHINGTON | WASHINGTON |
| State and Zip Code | DC 20426 | DC 20585 |
| Telephone Number | (202) 502-8961 MAYBE | (202) 586-5000 |
| E-mail Address (if known) | cheryl.lafleur@ferc.gov | THE.SECRETARY@HQ.DOE.GOV |

SEE ATTACHED

Defendant No. 2

Name _____ *SEE ATTACHED* _____

Job or Title
(if known) _____

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address
(if known) _____

Defendant No. 3

Name _____ *SEE ATTACHED* _____

Job or Title
(if known) _____

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address
(if known) _____

*(If there are more than three defendants, attach an additional page
providing the same information for each additional defendant.)*

## C.   Place of Employment

The address at which I sought employment or was employed by the defendant(s)
is:

Name _____ FERC _____

Street Address _____ 888 FIRST STREET, NE _____

City and County _____ WASHINGTON _____

State and Zip Code _____ DC 20426 _____

Telephone Number _____ (202) 502-8961 _____

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☑ Failure to hire me.

☑ Termination of my employment.

☑ Failure to promote me.

☐ Failure to accommodate my disability.

☑ Unequal terms and conditions of my employment.

☑ Retaliation.

☑ Other acts *(specify)*:  SEE ATTACHED

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

*PATHWAYS PROGRAM SIGNATURE DATE*

JULY 30, 2013, F.A.D DATE, B.O.I DATE, 640 HOURS DATE, 9/6/2012, 4/10/2013, 10/3/2012, FORLEDTO EMANUALL TEKIRIK (DATE FOR ENTIRE YEAR UNKNOWN) ENERGE CONFERENCE (DATE UNKNOWN)

*ADDITIONAL DATES INCLUDED IN STATEMENT OF CLAIM AND STATEMENT OF FACTS DOCUMENTS*  2012-2013

C.    I believe that defendant(s) *(check one)*:

3/21/2014 – RETALIATED BY FORCEN & ME OUT BUILDING
5/16/2014 – DATE TERMINATED

☑ ☒ is/are still committing these acts against me.

☐ is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑ race  OTHER

☑ color  BLACK

☐ gender/sex _____

☐ religion _____

☐ national origin _____

☐ age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

☐ disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows.  Attach additional pages if needed.

*MAKE ARGUEMENT HERE*
*ATTACHE EVERYTHING*

*SEE ATTACHED*

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*  *12/5/2013*

*EEO COUNSELOR: JULY 30, 2013 ; EEOC WASHINGTON FIELD OFFICE FEBRUARY 6, 2014 WITH SUPPLEMENTS & AUGUST 12, 2015   EEOC OFO 10/6/2015 AMENDED COMPLAINT INFORMATION 10/8/2016 & 8/11/2015 AFTERWARDS ON 2/1/2015*

B.    The Equal Employment Opportunity Commission *(check one)*: *8/11/2015*

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*
*JANUARY 17, 2017 ,  SEPTEMBER 5, 2016,  AND  APRIL 16, 2015 (MSPB)*

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

**V.**    **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

DONE — SEE ATTACHED
REMEDY
$21,720,000.00

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _APRIL 15_, 2017.

Signature of Plaintiff     _Marcus C. Gaskins_

Printed Name of Plaintiff  _MARCUS  C. GASKINS_

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

### B.    For Attorneys

Date of signing: _____, 20__.

Signature of Attorney     _____

Printed Name of Attorney  _____

Bar Number                _____

Name of Law Firm          _____

Address                   _____

Telephone Number          _____

E-mail Address            _____

UNITED STATES DISTRICT COURT
STATE OF MARYLAND
GREENBELT DIVISION

CASE NO. _____

Marcus C. Gaskins

    Plaintiff.

    Vs



Department of Energy, Federal Energy Regulatory Commission, Office of Special Counsel, and
Merit Systems Protection Board

    Rick Perry, Secretary for the Department of Energy
    Cheryl A. LaFleur, Acting Chairman for the Federal Energy Regulatory Commission
    Additional Defendants/ (see List of Defendants Sheet)

### MANDITORY JUDICIAL NOTICE

All officers of the court for the United States District Court, State of Maryland are hereby placed on
notice under authority of the supremacy and equal protection clauses of the United States Constitution
and the common law authorities of Haines v. Kerner, 404 U.S. 519, Platsky v. C.I.A. 953 F.2d. 25, and
Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying on Willy v. Coastal Corp., 503 U.S. 131,
135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting
Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964,
229 F. Supp.647, American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir.
07/25/2001).

In re Haines: pro se litigants (Plantiff is a pro se litigant) are held to less stringent pleading standards
than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are
entitled to the opportunity to submit evidence in support of their claims. In re Platsky: court errs if
court dismisses the pro se litigant (Plantiff is a pro se litigant) without instruction of how pleadings are
deficient and how to repair pleadings. In re Anastasoff: litigants' constitutional rights are violated when
courts depart from precedent where parties are similarly situated. All litigants have a constitutional
right to have their claims adjudicated according the rule off precedent. See Anastasoff v. United States,
223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient
for a motion to dismiss or for summary judgment, Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

Dated April 15, 2017

Respectfully Submitted,

Marcus C. Gaskins

Marcus C. Gaskins
8650 Willow Leaf Lane
Odenton, Maryland
(443) 216-9851

List of Defendants

1.) Rick Perry, Secretary for the Department of Energy

1000 Independence Avenue, SW, Washington, DC, 20585 (email: The.secretary@hq.doe.gov)

2.) Cheryl A. LaFleur, Acting Chairman for the Federal Energy Regulatory Commision

888 First Street, NE, Washington, DC 20426 (email: cheryl.lafleur@ferc.gov)

   a. Charles (Kirk) Cover, Project Review Branch (PRB) Chief in Division of Hydropower Administration & Compliance (DHAC) (email: charles.cover@ferc.gov)
   b. Chrystal Martin, Office of Energy Projects (OEP) Assistant Director (email: chrystal.martin@ferc.gov)
   c. Michael (Mike) Mrozowski, Human Resources Division (HRD), Recruitment and Development Branch Chief (email: Michael.Mrozowski@ferc.gov)
   d. Nancy Bryant, Human Resources Specialist (Nancy.Bryant@ferc.gov)
   e. Steve Eskin, HRD Human Resources Specialist, main point of contact initially and Job Application Person (Steven.Eskin@ferc.gov)
   f. Amanda Perry, HRD Recruitment Coordinator/Pathways Program Officer, and STARS Program Manager (email: Amanda.Perry@ferc.gov)
   g. Edward Abrams, DHAC (DHAC) Director (Maybe Retired)
   h. Anton Porter, Office of the Executive Director (OED) Executive Director
   i. Madeline Lewis (EEO Advisor), Kadia Givner, and other EEO lady present on person who complained to Anton Porter on me to have me removed
   j. Doretha Geter, EEO Senior Lady (Maybe Retired)
   k. Sidney Chapman, Branch Chief of Labor & Employee Relations in OED
   l. Heather Campbell, DHAC Assistant Director
   m. Edward Gingold, Senior EEO Counselor
   n. Alyssa Asonye, Chief Human Capital Office in OED, Human Resources Division Director
   o. Jeff Wright, Office of Energy Projects Director (Maybe Retired)
   p. Todd Henby, Security and Safety Division Director
   q. Jeremy Jessup, PRB Coworker
   r. Ryan Stertz, Internship Program Recipient and then Career Conditional Coworker
   s. Francesca Monti, Internship Coordinator and Internship Program Recipient

3.) Carlton M. Hadden, Director of the EEOC Office of Federal Operations

P.O. Box 77960, Washington, DC 20013

4.) Anthony W. Cummings, Administrative Judge for the Merit Systems Protection Board

1615 M Street, NW, Washington, DC 20036

5.) Alejandra Duarte Dove, Attorney Complaints Examining Unit, US Office of Special Counsel

1730 M Street, NW, Suite 218, Washington, DC 20036-4505 (email: adove@osc.gov)

6.) Lisa A. Kleine, EEO Investigator/Esquire

1808 Lamont Street, N.W., Washington, D.C. 20010 (email: lakleinelaw@gmail.com)

7.) Jacqueline Ivey, EEOC Washington Field Office

131 M Street, NE, 4th Floor, Washington, DC 20507

Marcus Gaskins' Statement of Claims April 15, 2017

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plantiff harm or violated the plantiffs rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, nu,ber each claim and write a short and plain statement of each claim in a separate paragraph.

## Federal Energy Regulatory Commission (Ferc Agency) Claims:

I.   The Ferc Agency originally accepted for investigation Marcus Gaskins allegation that he was discriminated against on the basis of race (other) and color (black) when management denied his request to convert him from a Civil Engineer in Training Student (Excepted Conditional) to a Career Conditional employee prior to completion of a Master's of Engineering Degree at Howard University. Evidence was obtained and provided that shows there was at least 1 Caucasian male who was converted after 120 days in the program with only a Bachelor's Degree.

II.  The Equal Employment Opportunity Commission Washington Field Office (EEOC WFO) amended Marcus Gaskins originally accepted allegation to add the following incidents of discrimination:

   a.   Wrongful termination
   b.   Creation of Marcus Gaskins position within 120 days after his termination
   c.   Not selected for newly created position and not provided a justification
   d.   Negative references
   e.   Unemployed for 6 months while applying for jobs
   f.   Inability to pay rent due to wrongful termination
   g.   Inability to obtain new position due to negative references from supervisor

The EEOC Administrative Judge Jacqueline M. Ivey accepted all of the above-referenced claims in the Order dated June 10, 2015, denied 11 other claims, and dismissed 13 other claims because they fail to state a claim pursuant to EEOC Regulation 29 C.F.R. 1614.107(a)(1). This order was provided in response to Marcus Gaskins' request for a hearing dated February 6, 2014. The EEOC Judge Ivey stated that basis for accepting all of the above-referenced claims is:

> *Amendment of the additional claims is proper for claims that are "like or related to those raised in the complaint."* ***See 29 C.F.R. § 1614.106(d)****. Generally, like or related claims involve incidents which add to or clarify the original claim, and/or could have been reasonable expected to grow out of the investigation of the original claim****.*** ***See Scher v. U.S. Postal Serv.****, EEOC Request No. 05940702 (May 30, 1995)***.**

Therefore, the Ferc Agency does not have any basis to submit documentation on failure to state a claim.

III. The defendants at the FERC Agency conspired to interfere with my civil rights with discriminatory prohibited practices by providing me with multiple disadvantages in the workplace environment that were not similarly provided to other equally employed people in both categories of the Cooperative Education Program Agreement Recipient/STARS Program and the Pathways Program.

   a.   The programs were designed to be 640 hours long prior to conversion. Marcus Gaskins was not properly placed into the Cooperative Education Program Agreement with his

Marcus Gaskins' Statement of Claims April 15, 2017

graduation date, but Ryan Stertz was.  Marcus Gaskins was told that he is not entitled to an annual review by Charles Cover as the first act of disadvantaging and discriminating against Marcus Gaskins.  Marcus Gaskins was already informed by Doretha Geter and Martha Jones that he is supposed to get annual reviews and grade increases because other Cooperative Education Program Agreement Recipients have received these reviews and promotions in the past.  When Marcus Gaskins had Charles Cover's decision on annual reviews overturned, every instance for advancement and acceptance was discriminated against.  Marcus Gaskins was forced to copy Charles Cover on every email sent out for the duration of the next year.  After the annual evaluation was conducted, Charles Cover stated he was not going to promote me in the program ever.  I informed him that Martha Jones and Doretha Geter both stated that if I get a Fully on all my evaluation points, then I would be automatically given a grade increase.  Charles Cover then said he will give me a fully and let me do that, but discriminatingly gave me less points and wrong very bad comments about my work performance and forced me to sign the form.  I consulted with Doretha Geter after that because Martha Jones Retired, and Ms. Geter instructed me to submit a grievance by emailing Chrystal Martin who replaced Martha Jones, the going to Human Resources Division (HRD).  When I went to the HRD in confidence, my grievance was forwarded to Charles Cover and brought tto his attention and nothing was done about it.  I was told I do not have rights to use the Union nor do I have rights to request a desk audit nor do I have rights to have a formal grievance filed.  On October 3, 2012, an incident occurred in the ArcGIS lab with Charles Cover, Jeremy Jessup, Anthony DeLuca, and Marcus Gaskins where Charles Cover yelled at Marcus Gaskins stating "You are not equal to anybody" and "you do not have authority to put in IT tickets" and "All IT tickets must be placed by everyone else in the Project Review Branch"; On September 6, 2012, verbal telework requests had been made on at least 5 different occasions and no response was provided, but then instructed to submit an application and Marcus Gaskins application was discriminated against when his application was denied stating that no interns were allowed to telework because Charles Cover wanted to closely supervise and discriminate against Marcus Gaskins.  Charles Cover probably knew this case was going to happen so he did things specifically to show he does not care about my protected classes.  On April 10, 2013, a meeting was held with Sidney Chapman and Mike Mrozowski that was set up by Union Representative who strongly felt I was being discriminated against and I was referred to these gentlemen by Madeline Lewis after my grievance was shut down.  In this meeting, Sidney Chapman, whom I was told will fix the issues, deferred all the problems presented about conversion to Mike Mrozowski who talked right back to Charles Cover.  On July 30, 2013, Charles Cover did another instance of discrimination where he conspired with Chrystal Martin to establish that I would not get a grade increase in 2013 either, further ensuring that I will not be able to apply for any Engineering positions at the agency since they are all GS-11 and GS-12 at the time.  Charles Cover further stated that I should be just happy to have a job and proceeded to give me another bad rating with a Fully associated to it when I never received any inclination throughout the year to show that I was not Over Achieving my requirements.

Marcus Gaskins' Statement of Claims April 15, 2017

Marcus Gaskins filed a discrimination complaint as a result and underwent reprisal, retaliation, and conducted a statistical analysis proving the significance of multiple disadvantages in the workplace environment with the variable discrimination under Dr. Ron Manuel at Howard University. (see letter and statistical analysis) Marcus Gaskins was supposed to be placed into the Recent Graduates Component of the Pathways Program and all of this could have been ultimately avoided. All of the information submitted to the FERC Agency, the EEOC OFO, and the Equal Employment Opportunity Office of Federal Operations (EEOC OFO) were organized with a number of pages on the top of the submittal that provided a summary of information that relates to this claim and must not be dismissed.

IV. The Ferc Agency defendants further discriminated when Charles Cover would state that promotions are up to people above him, such as Edward Abrams, but Edward Abrams would then state it is up to Charles Cover; then Chrystal Martin would state Marcus Gaskins does not get promotions and Mike Mrozowski would state that I am not going to have a permanent position after this program; Steve Eskin would state Charles Cover is the only person who can promote me. Ashish Desai, Jennifer Farr, and Jennifer Ambler, and Mary Karowski were all hired a couple of years after me, I trained them on how to use the different technology and on projects to help them, and then they were promoted overtop of me. For example, I wrote the Miining Claim review instructions after clearing up a 2 year backlog of mining claim reviews, then Charles Cover took my instructions and gave them to the new employees to create a presentation on how to do mining claims. This was blatent discrimination and plagiarism since I was not involved or coordinating the presentation.

V. The Ferc Agency defendants further discriminated when they rejected/denied telework requests when others in the program and in my branch (the Project Review Branch) were given the opportunity to telework. Teleworking would have aided with the rigors of commuting by metro into DC from Maryland to work full-time and also commuting from work to Howard University to do the required 6 credits of Graduate Engineering coursework to be able to work full-time at the FERC Agency. Charles Cover teleworked and did not want me to telework on his day of teleworking either.

VI. The Ferc Agency defendants further discriminated when they did not use my Bachelor's Degree in Civil Engineering from Morgan State University with expected graduation date in June 2011 to bring me into the Summer 2011 program and forced me to do a Master's Degree Program to get a job at the Agency with a start date of August 15, 2011. My resume and multiple application were given to me to apply for over the course of 8 months by Doretha Geter, Madeline Lewis, Steve Eskin, Nancy Bryant, and Kimberly Watkins over the course of 6 months from February 2011 to August 2011.

VII. The Ferc Agency defendants further discriminated when they did not refer Marcus Gaskins to the selecting official and thus not selected for any of the numerous positions at the FERC Agency I applied to before my appointment, during my appointment, and after my appointment.

VIII. The Ferc Agency defendants further discriminated when they did not provide Marcus Gaskins with accurate and corrected SF-52 and SF-50 documentation for my full-time work experience while applying to numerous positions at the FERC Agency and outside of the FERC Agency during my Excepted Conditional Appointment to be able to become Career-Conditional through

application. Specifically, the forms I was provided with stated that I was part-time from August 15, 2011, to January 23, 2013, even though multiple requests were made to have my status changed for application purposes.

   a. At the start of the Excepted Conditional appointment on August 15, 2011, Hillary Glassman provided the orientation meetings where she instructed me that full-time status was 32.5 hours a week. While attending Morgan State University, until December 15, 2011, Marcus Gaskins worked the minimum 32.5 hours a week to remain full-time. However, upon review of Marcus Gaskins SF-50, FERC HRD labeled Marcus Gaskins Part-Time. In January 2012, Marcus Gaskins transferred to Howard University to be able to work 40 hours a week and to be closer to work. Over the time fram from January 2012 to January 23, 2013, multiple requests were made to change the status and fix the errors. It took an entire year to only change the status to full-time and no fix was provided for the previous year and a half of service on the SF-50s. Charles Cover and Chrystal Martin, Mike Mrozowski and Steve Eskin all conspired to discriminate against me by telling me to get approval from someone else over the course of a year and a half to fix my successful work experience, all the while my applications were continuously not referred to the selecting official because I could not prove that I had years of service at the GS-7 grade. My status should have never been part-time since I was working 32.5 hours a week while attending Morgan State University and commuting on the marc train into work in DC. On March 21, 2013, Marcus Gaskins contacted the Office of Personnel Management Pathways Program representative named Rachel Dorman to complain in an email to the Pathways Program Management and receive help since I have all these issues. My complaint to her was emailed to Amanda Perry at the Ferc Agency and then sent back to Mike Mrozowski and Charles Cover. On May 29, 2013, Charles Cover scheduled a meeting with Marcus Gaskins and Heather Campbell. At this meeting , Chrystal Martin surprise attended where Charles Cover and Chrystal Martin attempted to enlist Heather Campbell's support in conspiring to discriminate against me by looking more into my schedule.  Heather Campbell was reluctant to fall into the discrimination but she is involved because she let the discrimination happen right under her perview.

IX.   The Ferc Agency defendants further discriminated when they blocked efforts to get a new supervisor under the program who will recognize that my work is well above the GS-7 pay grade and who will not discriminate.

X.   The Ferc Agency defendants further discriminated when they did not convert Marcus Gaskins into career-conditional employee after 640 hours completed from August 15, 2011, start date.

XI.   The Ferc Agency defendants further discriminated when they did not convert Marcus Gaskins into career-conditional employee  after 2012 Summer Intern Program Completion (with Pathways Program)

XII.   The Ferc Agency defendants further discriminated when they did not convert Marcus Gaskins into career-conditional employee after Pathways Program Recent Graduate Program Made Available on July 12, 2012, which was only 1 year and 1 month after I graduated and the Recent Graduate allows to be hired if less than 2 years

Marcus Gaskins' Statement of Claims April 15, 2017

XIII.   The Ferc Agency defendants further discriminated when they did not convert Marcus Gaskins into career-conditional employee when placed into Summer intern category of the Pathways Program in January 2013 and forcing me to sign the Pathways Program document to keep working at the FERC Agency

XIV.   The Ferc Agency defendants further discriminated when they did not convert Marcus Gaskins into career-conditional employee when management retaliated against me by not applying the correct condition to successful completion of the Pathways Program which requires that after graduating, work for 120 days is provided unless the creation of a position is provided.

XV.   The Ferc Agency defendants further discriminated when they did not convert Marcus Gaskins into career-conditional employee because I was considered a "freebee" where the Project Review Branch, the Division of Hydropower Administration and Compliance, and the Office of Energy Projects did not have to pay my salary out of the department budget

XVI.   The Ferc Agency defendants further discriminated when they did not convert Marcus Gaskins into career-conditional employee when managements used the programs that were provided to further disadvantage me and keep me in the program for an overextended period of time while looking for any instance to have me removed for the program rather than just convert me.

XVII.   The Ferc Agency defendants further discriminated when they did not converted Marcus Gaskins into career-conditional employee after 1 year, when career conditional employees become career employees after only 1 year of service. Marcus Gaskins worked at the agency almost 3 years and was terminated.

XVIII.   The Ferc Agency defendants further discriminated when they told the Merit Systems Protection Board (MSPB) that the EEOC Case will be used to handle these matters to get the case dismissed and then filed a motion with the EEOC OFO that I have a pending case with the MSPB to get the EEOC case dismissed. The MSPB filing was not premature and was justified under the Whistleblowers Act since Marcus Gaskins was being retaliated against and reprisal was taking place.

XIX.   Madeline Lewis discriminate on Marcus Gaskins by aiding in the retailiation efforts of the Office of the Executive Director. Madeline Lewis was coaching me along with Doretha Geter throughout my appointment on what to do up until I filed my complaint. When I hand-delivered a request for an EEOC Hearing for signature, I expressed my frustration with the totally biased investigative report. Kadia Givner was not in her office or I would have delivered it to her. Madeline Lewis took offense to my statement and made my being at the Ferc Agency her effort. Marcus Gaskins stands by his statement that Madeline Lewis allowed all of the discriminatory practices to happen right in front of her and then turned on the very person whom she should have been looking out for, Marcus Gaskins. Also, on multiple occasions, Marcus Gaskins a Madeline Lewis walked to the bus stop after work, and Anton Porter attempted to make an appearance of there being a conflict with Madeline Lewis and Marcus Gaskins outside one day. Madeline Lewis' job is to be available to the people involved in the EEO process and the Executive Director made Marcus Gaskins final weeks at the Ferc Agency very uncomfortable. This should not be the case for a protected class individual who is not supposed to be retaliated against.

Marcus Gaskins' Statement of Claims April 15, 2017

XX.  Edward Gingold did not provide me with a copy of his EEO Counselors Report. The report had to be obtained by the EEO in the filing with the EEOC OFO and EEOC WFO appeal on the denied issues and supplement to the appeal on the denied issues.

XXI.  Edward Gingold did not include all of the information relayed to him in our 20 minute meeting and reiterated to him in the documentation copied to him with my discrimination complaint prior to him completing his EEO Counselors report.

     a. Marcus Gaskins had to file two separate documents appealing the Ferc Agency EEO accepted claim because they did not accurately account for the advancement within the program issues that I clearly stated.

XXII.  The Ferc Agency did not advance me within the multiple programs I completed at the Ferc Agency. Programs completed were 2 Cooperative Education Program Agreements, one for Morgan State University, another for Howard University, and a Pathways Program.

XXIII.  The Ferc Agency defendant Todd Henby, Security and Safety Division Director retaliated against Marcus Gaskins while conspiring with Sidney Chapman, Alyssa Asonnye, Charles Cover, and Chrystal Martin on March 21, 2014, in response to my filing of the EEOC Request for a Hearing Documents, the MSPB filing, and the OSC Filing. Mr. Henby did not let me get all of my belongings and forced me to leave the premises immediately. Mr. Henby and Mr. Chapman took my email from me that I had just sent to Mr. Chapman that day nicely detailing the events of the past few days. In addition, my background check that was conducted from August 15, 2011, to November 8, 2013, was not properly recorded into the system or my security clearance that I had so that I could apply for other Federal Government positions or my clearance was stripped from me. These are all terrible acts because I was denied another Recent Graduates position as a result to what Todd Henby did to my record when I was selected and Hired to the Department of Homeland Security Federal Emergency Management Agency upon successful completion of a background check.

XXIV.

**Investigator Claim**

XXV.  Lisa Kleine discriminated against Marcus Gaskins when she provided a biased Report of Investigation for the FERC Agency. She did not get affidavits from the people I determined to be most important to proving my case and did not obtain a complete list of all of the Cooperative Education Program Agreement Recipients and Pathways Program Recipients along with whether they were promoted, whether they were converted, whether in undergraduate college or graduate college, and she never even came to the agency to conduct her interviews. This was so unprofessional because I was overly scrutinized by Charles Cover with my timesheets and he wanted to know every instance when I was going to do EEO meetings but she never schedule official meetings, only teleconferences with an undeterminable end time. Me. Kleine also had no regard for the fact that I was in school, and also forced me to do affidavits through the entire Christmas and New Years holiday.

Marcus Gaskins' Statement of Claims April 15, 2017

**EEOC Claims:**

XXVI. I have a grievance with the EEOC. The Washington Field Office and the Office of Federal Operations work against each other rather than together to address major issues in my complaint and claims.

    a. In a letter dated December 8, 2014, from Attorney Alejandra Dove at the OSC, Ms. Dove states the EEOC is responsible for enforcing Federal Laws that make it illegal to reprise against employees who file an EEO related complaint. Wrongful Termination falls under this category but the EEOC Washington Field Office and the EEOC Office of Federal Operations both dismissed my case because they both state they do not have jurisdiction. When Judge Jacqueline Ivey dismissed my case, she instructed me to file a motion to remove wrongful termination from the list of claims that were accepted and then she will be able to review the documentation again, but the agency sent a letter dismissing my complaint and all the information Judge Ivey put in her "Mixed Case" Determination Order Dismissing Case for Lack of Jurisdiction. When I notified Judge Ivey of what the agency did even though my motion was being reviewed, Judge Ivey told me to appeal the Ferc Agency Final Agency Decision letter since my motion was still under review. I appealed this decision to the EEOC OFO, but the EEOC OFO sent a decision out 1.5 years later stating that I filed an appeal with the EEOC OFO incorrectly and lost my rights to resubmit with the Merit Systems Protection Board. The EEOC OFO did not even discuss the merits of my case that was thoroughly reviewed. The OSC letter also states that "EEO matters are more appropriately resolved through EEO process and OSC will not bypass the procedure for resolving such allegations, but the EEOC still reconsidered that there is no jurisdiction to rule on this case.

    b. Wrongful termination is still a reprisal in this case as well and the EEOC did not rule on the other claims that I had.

**Office of Special Counsel (OSC) Claim:**

XXVII. I have a grievance with the OSC. Attorney Alejandra Dove does accurately review my complaint and renders a ruling that does not accurately reflect the truth.

    a. The information provided to Ms. Dove included documentation obtained on how Ryan Stertz was hired at the Ferc Agency after he graduated, but Ms. Dove says this is not included because it is part of discrimination matter and then concludes that "Any program completed beforehand, such as your Bachelor's Degree, would not qualify." This is a violation of the law, rules, and regulations because the Ferc Agency applied the same law, rules and regulations differently to Ryan Stertz than they did to Marcus Gaskins. (see MSPB exhibits)

    b. The OSC did not do anything to help my case, but provide a milestone to get to the Merit Systems Protection Board. As soon as I filed my OSC complaint, the Ferc Agency had me removed (placed on administrative leave with pay). Ms. Dove does not discuss any of the information about the retaliation as a result of filing this case.

Marcus Gaskins' Statement of Claims April 15, 2017

**Merit Systems Protection Board (MSPB) Claim**:

XXVIII.   I have a grievance with the MSPB. The MSPB Judge Anthony W. Cummings did not help Marcus Gaskins when he came to the MSPB with retaliation claims.

a. Judge Cummings did not inform Marcus Gaskins that the case is a mixed case and that the MSPB has jurisdiction over a mixed case and led Marcus Gaskins to believe that having to refile every 90 days to keep the MSPB appeal active. While Marcus Gaskins wanted to refile every 90 days, the EEOC WFO attempted to take away the case from the MSPB and then the EEOC OFO attempted to give the case back from the MSPB. The one conclusion that can be made here is that nobody wants a real case. Marcus Gaskins filings every ninety days was impossible with the level of retaliation and reprisal coupled with Howard University graduation, termination, job searching, unemployment filings, losing apartment, moving due, weight gain, stress and pain and suffering that were experienced as a result of being retaliated against.

1.) Rick Perry, Secretary for the Department of Energy
1000 Independence Avenue, SW, Washington, DC, 20585

2.) Cheryl A. LaFleur, Acting Chairman for the Federal Energy Regulatory Commision
888 First Street, NE, Washington, DC 20426

a. Charles Cover, Project Review Branch (PRB) Chief in Division of Hydropower Administration & Compliance (DHAC)

b. Chrystal Martin, Office of Energy Projects Assistant Director

c. Michael (Mike) Mrozowski, Human Resources Division, Recruitment and Development Branch Chief (email: Michael.Mrozowski@ferc.gov)

d. Nancy Bryant, HR Job Application Person

e. Steve Eskin, HR main point of contact initially and Job Application Person

f. Amanda Perry, HR Pathways Program Coordinator and Job Application Person

g. Edward Abrams, DHAC (DHAC) Director (Maybe Retired)

h. Anton Porter, Office of the Executive Director (OED) Executive Director

i. Madeline Lewis (EEO Advisor email: Madeline.Lewis@ferc.gov), Kadia Givner (kadia.givner@ferc.gov), and other EEO lady present on person who complained to Anton Porter on me to have me removed

j. Doretha Geter, EEO Senior Lady (Maybe Retired)

k. Sidney Chapman, Branch Chief of Labor & Employee Relations in OED

l. Heather Campbell, DHAC Assistant Director

m. Edward Gingold, Senior EEO Counselor

n. Alyssa Asonye, Chief Human Capital Office in OED, Human Resources Division Director

o. Jeff Wright, Office of Energy Projects Director (Maybe Retired)

p. In a meeting with Jeff Wright on April 26, 2013 at 9:15 AM, I was told that the Office of Energy Projects does not have any money in their budget to hire any new employees and that is why I have not been converted. Since Charles Cover and Edward Abrams both diverted the issue to each other, my only other option was to communicate with

Marcus Gaskins' Statement of Claims April 15, 2017

the Office Director.  My grievance state plainly is, even though Mr. Wright states there was no money in the budget for new hires and to convert me, but then Chrystal Martin created a poster that was displayed in the office which showed all the new hires pictures, names, and positions.  The OEP New Hires in another Division are Adam Beeco, William Connelly, Patrick Ely, Nick Estema, Chelsea Hudock, Steven Kusy, Susanne Novak, Adam Paer, Jason Robinson, Corey Vesina, and John Yadowski.  The new hires the DHAC are Jennifer Ambler, Alicia Burtner, and Mary Karowski.  The new hires in my division are Ashish Desai and Jennifer Farr.

q.  Todd Henby, Security and Safety Division Director

r.  Jeremy Jessup, Anthony Deluca,  and Krista Sakillaris, PRB Coworkers

s.  Ryan Stertz, Internship Program Recipient and then Career Conditional Coworker

t.  Francesca Monti, Internship Coordinator and Internship Program Recipient

u.  James Hough, Union Representative

v.  William Cary, Union Representative

w.  Jerry Williams, Union Representative

x.  PRB New Hires --Ashish Desai and Jennifer Farr

y.  DHAC New Hires --Jennifer Ambler, Alicia Burtner, and Mary Karowski

z.  Martha Jones, OEP's Administrative Officer

3.) Carlton M. Hadden, Director of the EEOC Office of Federal Operations
P.O. Box 77960, Washington, DC 20013

4.) Anthony W. Cummings, Administrative Judge for the Merit Systems Protection Board
1615 M Street, NW, Washington, DC 20036

5.) Alejandra Duarte Dove, Attorney Complaints Examining Unit, US Office of Special Counsel
1730 M Street, NW, Suite 218, Washington, DC 20036-4505

6.) Lisa A. Kleine, EEO Investigator/Esquire
No address on record

7.) Jacqueline Ivey, EEOC Washington Field Office
131 M Street, NE, 4th Floor, Washington, DC 20507

Marcus C. Gaskins

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission                                    **1 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

My name is Marcus Gaskins.  I am presenting the statement of facts for the grievances and discrimination
complaints, retaliation, reprisal, with wrongful termination issues presented in this Statement of Facts.  The
Executive Director at the Ferc Agency, Anton Porter, stated he would not settle.  Ferc Agency also did not show
favoritism to my attempts to settle.  Therefore, I intend to pursue this case to the full extent of the law.  I need to
know which District Court my case will be accepted in so that I can submit cases in support of my claim.  Will it be
4th Circuit or DC Circuit?

The Office of Personnel Management Pathways Program was contacted after my position with the Ferc Agency
was terminated and I was told that I need to submit the wrongful termination documentation for the agency
actions against me because I was entitled to the 120 days of work after graduation and conversion into a Federal
position.  My position was not paying me properly for the work that I was doing in comparison to all the other
individuals in my Project Review Branch. (See Tab 8 and 9 Exhibits)  I would like to reference into this claim the
Chapter XIV – 1620.1 to 1620.34 Equal Pay Act and the Federal Sector Equal Employment Opportunity.  I have
favorable letters of recommendation from William Guey-Lee, Engineering Resources Branch Chief, and Edward
Abrams on my work performance.  My appointment was terminated as shown on my last SF-50, but the Ferc
Agency states that my appointment expired and I was not terminated.  I did prove with Ryan Stertz documentation
with a "preponderance of evidence that the reason proffered by the agency was a pretext for discrimination."  In a
program that is designed for conversion after 640 hours and with the Ferc Agency constantly making me repeat
the program requirements and holding my conversion over my head while looking for any reason to have me not
converted and ultimately removed, I have done all that I can do to satisfy the Ferc Agency.  The Report of
Investigation conducted on behalf of the Ferc Agency as a mandatory requirement was incomplete and biased
towards the Ferc Agency.  The investigator Lisa Kleine did not properly obtain all information on the Pathways
Program recipients and did not properly obtain all the information for the Cooperative Education Program
Recipients to include in the Investigative Report.  In fact, all of the participants that I was in the program with in
the Summer 2012 were not included, especially Ryan Stertz, whom I emphasized must be one of the people
included in the affidavit interviews.  (See Pathways Program Exhibits, Mike Mrozowski Email Exhibits, and
Franchesca Monti Exhibit)

The EEO counselors report did not include all of the information that I informed Edward Gingold were happening
as part of the discrimination, and therefore resulted in only the conversion issue being accepted for investigation.
In fact, I expressed my issues to Edward Gingold with Charles Cover not advancing me within the program to be
able to at least apply for the GS-11 Engineering Positions that the Ferc Agency only have available for Civil
Engineers.  I expressed how I would not even have a chance to apply to these positions and will be hopeless if
things proceed as they were proceeding.  Please see the EEO Counselor's Report (EEOC OFO Exhibits) and Mike
Mrozowski's emails Exhibits:

- Edward Gingold in the counselors report states that conversion happens once I graduate.
- Mike Mrozowski states that the Pathways Program is not a Pathway into the Government and I will not be
  converted upon completion on numerous occasions towards the end of my employment at the Ferc
  Agency.
- Towards the end of my employment at the Ferc Agency, Charles Cover stated that the program provides
  only work experience and the burden falls on the program recipient to find a job after the program is
  completed.
- Edward Gingold states a position will be created if an opening exists.  However, I was terminated and then
  another opening for my position was created for my position which demonstrates just how vital my role
  was to the Ferc Agency.

The management at the Ferc Agency along with the OED and HRD representatives Abused their Power on
numerous occasions when they used their power and their agreements to force me to sign multiple different
program agreement documents as a means to keep me out of the permanent "Career-Conditional" status rather
than to place me into this status.  The Ferc Agency EEO office and the EEOC OFO both did not advise me of my
rights to file with the MSPB in the beginning to ensure all of my issues were address.  Then, the FERC Agency and
the EEOC OFO used my filing with the MSPB as a means to have my case dismissed and ultimately not address the
clear grievances and acts of discrimination in my case.  Madeline Lewis and Anton Porter would not provide me

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission **2** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

with any respect in the workplace and instead used their position and power to destroy my reputation at the Ferc
Agency and have me removed as a result of the above-referenced complaints, cases, and filings.

In a telephone conversation with the MSPB Judge and the Ferc Lawyer Michelle Davis, the basis for not proceeding
with my appeal was that I have an EEOC Appeal which will rule on the case, with total disregard to the
whistleblowers act filing component of the appeal.  In the FERC document dated September 3, 2015, Michelle
Davis filed an opposition stating the matter is an MSPB matter.  These two statement conflict with one another.
Moreover, when the MSPB appeal was accepted and an acknowledgement order sent out with rights for discovery,
my pro se attempts to find out who my lawyer was so that I can submit discovery requests was blocked by Anton
Porter and Sidney Chapman, who stated that I can only make discovery requests with a lawyer.  Please note that
the Ferc Agency attempted to request all the EEOC documentation for the MSPB case when the Ferc Agency
already has the EEOC documentation.  I sent Ferc Agency all the documents already.

The EEOC OFO stated that I was supposed to file my appeal with the Merit Systems Protection Board, but did not
provide the right to file with the MSPB and stated my opportunity to do this is no longer timely even though
information was submitted that shows that I already filed with the MSPB and their initial decision was to continue
with the EEOC.  If it was the EEOC OFO intention to have me file with the MSPB, why does the law only allow the
EEOC OFO to provide the right to a Civil Action with the US District Court upon decision and upon reconsideration
decision, and only allow the EEOC Washington Field Office to provide rights to file with the MSPB in similar fashion
upon issuing dismissal decisions and upon issuing reconsideration decisions?

There are inconsistencies that have been noted with the application of the Pathways Program at the Ferc Agency
when compared to other Government Agencies, such as the Department of State and Department of Air Force.
There are injustices happening when the new pathways program came into effect; for example, I was not properly
categorized as a recent graduate.  There are discrepancies in the investigators report that caused me to always
have to submit rebuttal.  Martha Jones must be deposed to find out who got promoted in other offices within the
student programs.  The Ferc Agency discriminated with special emphasis and special impact.

Executive Director Anton Porter asked me "who specifically said I would not be converted." I told him Charles
Cover, in his affidavit, said I am ineligible for conversion and that he is not interested in a Civil Engineer" working
for him, even though we regulate Civil Engineering Municipal/Non-Municipal entities in the Department of Energy
Federal Energy Regulatory Commission Office of Energy Projects Division of Hydropower Administration and
Compliance Project Review Branch that he supervises. Mike Mrozowski stated I have to find my own job after the
program ends and I will not be converted.  I have to apply to positions non-competitively if available within the 120
days of me graduating to get a permanent position with the Ferc Agency.  A request was made to Anton Porter
that asked why these clear inequalities could not be resolved in settlement and current reprisal/retaliation is
allowed.

A self evaluation was conducted in June 2013, and a spreadsheet of completed assignments was included as an
exhibit as well as a list of comparison assignments with the other people in my branch.  Pathways Program details
and requirements of the Government Agencies were obtained from the Office of Personnel Management.

I was denied vacancy referral by Steve Eskin for Announcement Number FERC-DE-2013-0004 for a LNG Engineer
from October 19, 2012 to November 6, 2012. On August 13, 2012, my email to Nancy Bryant, who was the next
person in the informal chain of command for my grievance as advised by Doretha Geter, EEO Senior Technical
Expert, where I complain about Steve Eskin, HR Specialist, and my supervisor, Charles Cover (Civil Engineer), to try
to grieve, was forwarded on August 13, 2012, to Steve Eskin and sent back to Charles Cover on August 14, 2012, in
what is called as "an attempt to try to resolve the major issue." Please note, the EEO Advisor is Madeline Lewis.
On February 28, 2013, I was instructed by Madeline Lewis, to contact James Hough, William Cary, and Jerry
Williams, if I wanted to be moved somewhere else under the student program and advanced on paper. These
three gentlemen were the union and tried to get some results by setting up a meeting with Sidney Chapman, HR
chief of Labor. Sidney Chapman set up the meeting without including the union representatives and then brought
Mike Mrozowski to the meeting whom I already consulted with after the issue with Nancy Bryant and Steve Eskin.

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission                    **3 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

On July 29, 2013, an email confirming not receiving the proper amount of 3-4 quarterly reviews leading up to an
annual review with Charles Cover who replies by saying he has no record or reviewing me 3-4 times.  On
September 23, 2013, an email is sent to Sidney Chapman, Mike Mrozowski, Charles Cover, Chrystal Martin,
Madeline Lewis, Edward Gingold, and Anton Porter showing positions where student trainees get promotion
potential and advancement opportunity to have a chance to apply for the competitive GS-11/12/13 Engineer
positions that only exist at the Ferc Agency upon completion of whatever program requirements are forced upon
me. On February 8, 2014, issues develop with Madeline Lewis on February 9, 2014, because of filing appeal with
EEOC and hand-delivering fax to her.

I was not referred to the selected official for an Interdisciplinary Engineer position.  I was not promoted because I
informed my supervisor that administrative officer Martha Jones stated I would be promoted with a Fully
evaluation.  A email was sent to Kadia Givner and Madeline Lewis that included many of the job positions that I
was not even referred to the selected official for, even though I had multiple years of experience at the Ferc
Agency.  I was hired at the Ferc Agency through Affirmative Action Program and then retailiated because of this.
There was performance evaluation difficulties.  The quarterly performance evaluations were not done.  No
notification was provided throughout the year stating that my work is not outstanding.  To my knowledge, I was at
least performing Highly.  Identification that I am under some special category never seen before and
acknowledgement that I should just be happy to have this job was repeatedly stated to me by Charles Cover.  Then
the Ferc Agency discriminated against me by the blocking of transfer possibilities to another division or office by
Charles Cover first, then by HRD Mike Mrozowski and Sidney Chapman.

There were multiple application non-referrals by Steve Esking in response to me filing a grievance against him for
advising my supervisor that I am not a real government employee in the beginning of my employment with the
Ferc Agency.  There was also Applications denial as a form of retaliation because of discrimination complaint with
EEO at FERC.

Discovery requests were consistently requested for the Ferc Agency to provide the following: 1. A complete list of
all the Pathways Students after the program was implemented in June 2012; 2. A Complete list of all the students
at the Ferc Agency before the program began in June 2012; 3. Along with time in program, category of placement
within program (recent graduate/internship/presidential appointment/STARS/SCIP/etc.); 4. Starting grade in
program, ending grade in program, whether applied for higher grades, status of conversion or converted
automatically, degree obtained, date of degree on actual degree; 5. Reason why none of my applications ever get
referred to selecting official; 6. Explanation of why I cannot apply to federally competitive positions; 7. Explanation
of whether my 3 years of specialized experience at GS-7 is actually valid for application purposes; 8. Explanation on
whether my 3 years of Graduate School is valid for application Purposes; 9. Explanation on whether my 3 years of
specialized experience will be valid on May 10, 2014, when I graduated; 10. Explanation on Why other people get
hired in program after finishing Economics Bachelor's Degree, like Ryan Stertz, and get application/conversion
candidate status after 320 hours without having to get a Master's Degree, but I am forced to get a Master's off
Engineering Degree and am not even converted; 11. List of all student program participants who applied and was
referred to selecting official start dates, application dates, selection referral dates, hire dares, sswitch over dates;
12. List of students seleced as candidates without obtaining Master's Degree; 13. Why Anton Porter stated my
requests for discovery cannot be fulfilled upon written request?  Because I don't have a lawyer, a motion to
compel may be required.

During my appointment at the Ferc Agency, Charles Cover has given other people awards and bonuses by not me.
I am a team player and give 110% while helping other people with their assignments.  I hit the ground running and
don't see how I was helping other people and I don't get recognized.  I had a meeting with my chief and I talking to
him about how well I am doing.  As a result of this meeting, the workload that I was getting was reduced to a
smaller scope.  For example, the mining claim reviews that I was doing for Henry Woo were taken away from me.
On June 27, there was a project that I had but was given to Anthony DeLuca.  Then, Charles Cover  did not give me
any awards or even invite me to the award meetings anymore.

For my case, Sidney Chapman stated that Ryan Stertz, a white Caucasian, was hired under a different category of
the Pathways Program and was allowed to be converted after 640 hours of work or less, but I am not. In ***Brown v.***

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **4 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

**Board of Education of Topeka**, 347 U.S. 483 (1954), the United States Supreme Court declared state laws
establishing separate public schools for black and white students to be unconstitutional.  This ruling stated
separate facilities are inherently unequal and this case can be applied to my grievance of discrimination because
there are separate interpretations of the program being applied to me as a black other versus Mr. Stertz, and this
may be happening under many more circumstances at the FERC Agency.

In _McDonnell Douglas Corp. v Green_, the Supreme Court holds that a charging party can prove unlawful
discrimination indirectly by showing, for example, in a hiring case that: (1) the charging party is a member of a Title
VII protected group; (2) he or she applied and was qualified for the position sought; (3) the job was not offered to
him or her; and (4) the employer continued to seek applicants with similar qualifications. If the plaintiff can prove
these four elements, the employer must show a legitimate lawful reason why the individual was not hired. The
employee still may prevail if he or she discredits the employer's asserted reason for not hiring him or her.

The information provided in Marcus Gaskins' case of this document and the supporting exhibits proves all 4 of
these elements.  The letters of recommendation that I received from the FERC Agency and the thorough record of
the all the work I completed prior to filing my case with the EEO Counselor at FERC and included in the EEOC
Request for Reconsideration will be the information I have to discredit the FERC Agency for not hiring me and used
to discredit the statements that Executive Director Anton Porter in his Final Agency Action Letter.  These
documents prove that I wasmore than qualified to be selected and hired by the FERC Agency as a GS-9 and GS-11
when they created my position after I was wrongfully terminated, but I was never allowed a grade increase in my
position and they never posted GS-9 Engineer positions at the Headquaters until after I was terminated.

In _Franks v. Bowman Transportation Co._, the Supreme Court holds that Title VII requires an employer to hire a
victim of unlawful discrimination with seniority starting from the date the individual was unlawfully denied the
position.

In _McDonald v. Santa Fe Transportation Co._, the Supreme Court holds that Title VII prohibits racial discrimination
against whites as well as blacks.

In _National R.R. Passenger Corp. v. Morgan_, 536 U.S. 101 (2002), the Court ruled that an employer may be liable
for all acts contributing to a hostile work environment as long as one of the contributing acts occurred within the
applicable 180/300-day filing period.

Under Title VII of the Civil Rights Act of 1964, a plaintiff "shall" file an employment discrimination charge with the
Equal Employment Opportunity Commission (EEOC) either 180 or 300 days after "alleged unlawful employment
practices occurred." 42 U.S.C. §2000e-5(e)(1).  Marcus Gaskins, filed the following multiple charges with the EEOC
against the Federal Energy Regulatory Commission:

1.) The agency originally accepted for investigation Marcus Gaskins allegation that he was discriminated
    against on the basis of race (other) and color (black) when management denied his request to convert him
    from a Civil Engineer in Training Student (Excepted Conditional) to a Career Conditional employee prior to
    completion of a Master's of Engineering Degree at Howard University.  Evidence was obtained and
    provided that shows there was at least 1 Caucasian male who was converted after 120 days in the
    program with only a Bachelor's Degree.
2.) The EEOC amended Marcus Gaskins originally accepted allegation to add the following incidents of
    discrimination:
    a. Wrongful termination
    b. Creation of Marcus Gaskins position within 120 days after his termination
    c. Not selected for newly created position and not provided a justification
    d. Negative references
    e. Unemployed for 6 months while applying for jobs
    f. Inability to pay rent due to wrongful termination
    g. Inability to obtain new position due to negative references from supervisor

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **5 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

The EEOC Administrative Judge Jacqueline M. Ivey accepted all of the above-referenced claims in the Order dated
June 10, 2015, denied 11 other claims, and dismissed 13 other claims because they fail to state a claim pursuant to
EEOC Regulation 29 C.F.R. 1614.107(a)(1). This order was provided in response to Marcus Gaskins' request for a
hearing dated February 6, 2014. The EEOC Judge Ivey stated that basis for accepting all of the above-referenced
claims is:

> *Amendment of the additional claims is proper for claims that are "like or related to those raised in
> the complaint." See 29* **C.F.R. § 1614.106(d)**. *Generally, like or related claims involve incidents
> which add to or clarify the original claim, and/or could have been reasonable expected to grow
> out of the investigation of the original claim*. ***See Scher v. U.S. Postal Serv.*, EEOC Request
> No. 05940702 (May 30, 1995)**.

Therefore, the Agency does not have any basis to submit documentation on failure to state a claim.

For supportive documentation on the basis of my complaint claims in the Statement of Complaints, please refer to
the information below:

A. The Executive Director states that I was not performing my duties well at the FERC agency. However, I
   have multiple letters of recommendation from Branch Chief William Guey-Lee and Division Director
   Edward Abrams showing that I performed my position very well. (See Exhibit with Letters of
   Recommendation)
B. In an email on March 12, 2014, details regarding the merits of my discrimination case were provided as
   follows: Here is documentation that shows that I have fulfilled all of the conversion to the competitive
   service requirements under Title 5 CFR §362.204 and to show that the Pathways Program includes the
   recent graduates component, and all of the internship recipients, which I get compared to for equal
   employment opportunity.
   a. I fulfill (b)(1) because I have been working at the agency since August 15, 2011, which indicates
      that I have over 5200 hours of work completed.
   b. I fulfill (b)(2) because I completed I graduated from Morgan State University on May 21, 2011
      and started my appointment on August 15, 2011 (which is within the 120-day period preceding
      my appointment)
   c. I fulfill (b)(3) because I have favorable recommendations that I am attaching from former Division
      Director Edward Abrahms and former Engineering Branch Chief William Guey-Lee
   d. I fulfill (b)(4) because I have two years of Fully performance evaluations at the GS-7 so far and
      three years of Graduate Study completed
   e. I fulfill (b)(5) because I have met all of the agency's Participant Agreement requirements with the
      Intern (See attached Pathways Program Agreement)

   **Title 5 CFR**

   **§362.204 Conversion to the competitive service.**

   (a) An agency may noncompetitively convert an Intern who is a U.S. citizen, to a term or

   permanent appointment in the competitive service.

   (b) To be eligible for conversion, the Intern must have:

   > (1) Completed at least 640 hours of work experience acquired through the
   > Internship Program, except as provided in paragraphs (c) and (d) of this section,
   > while enrolled as a full-time or part-time, degree- or certificate-seeking student;

   > (2) Completed a course of academic study, within the 120-day period preceding
   > the appointment, at a qualifying educational institution conferring a diploma,
   > certificate, or degree;

   > (3) Received a favorable recommendation for appointment by an official of the
   > agency or agencies in which the Intern served;

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission **6 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

(4) Met the qualification standards for the position to which the Intern will be converted; and

(5) Met agency-specific requirements as specified in the agency's Participant Agreement with the Intern.

(c)

(1) An agency may evaluate, consider, and grant credit for up to one-half (320 hours) of the 640-hour service requirement in paragraph (b)(1) of this section for comparable non-Federal internship experience in a field or functional area related to the student's target position and acquired while the student:

(i) Worked in, but not for, a Federal agency, pursuant to a formal internship agreement, comparable to the Internship Program under this subpart, between the agency and an accredited academic institution;

(ii) Worked in, but not for, a Federal agency, pursuant to a written contract with a third-party internship provider officially established to provide internship experiences to students that are comparable to the Internship Program under this subpart; or

(iii) Served as an active duty member of the armed forces (including the National Guard and Reserves), as defined in 5 U.S.C. 2101, provided the veteran's discharge or release is under honorable conditions.

(2) Student volunteer service under part 308 of this chapter and other Federal programs designed to give internship experience to students (e.g., fellowships and similar programs), may be evaluated, considered, and credited under this section when the agency determines the experience is comparable to experience gained in the Internship Program.

(d) An agency may waive up to one-half (*i.e.,* 320 hours) of the 640-hour minimum service requirement in paragraph (b)(1) of this section when an Intern completes 320 hours of career-related work experience under an Internship Program appointment and demonstrates high potential by outstanding academic achievement and exceptional job performance. For purposes of this paragraph:

(1) *Outstanding academic achievement* means an overall grade point average of 3.5 or better, on a 4.0 scale; standing in the top 10 percent of the student's graduating class; and/or induction into a nationally-recognized scholastic honor society.

(2) *Exceptional job performance* means a formal evaluation conducted by the student's Internship supervisor(s), consistent with the applicable performance appraisal program that results in a rating of record (or summary rating) of higher than Fully Successful or equivalent.

(e) An agency may not grant a credit or waiver (or a combination of a credit and waiver) totaling more than 320 hours of the 640-hour service requirement in paragraph (b)(1) of this section.

C. An email received from Charles Cover dated June 27, 2014, states how Mr. Cover documented 2.58 years spent at FERC and discusses how my work experience will be discredited by him as a result of these proceedings and how a decertification letter will be sent to the Maryland Board of Professional Engineers removing much of my Engineer in Training work experience that I fulfilled under the role where I am currently being discriminated against.

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **7 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

D.  While attending Howard University, Advanced Statistic Level I and II courses were taken under the
direction of Dr. Ron C. Manuel. I was counseled, offered advice, and inspired with supportive sessions, in
class and after class, to understand the how breaking through from low class to middle class applies to an
individual while using level of education, parents education, both parents raising the children, and
personal experience in a statistical analysis. From these sessions, Dr. Manuel helped me to channel the
frustrations into my studies and obtain more knowledge about how the experiences I am currently
experiencing at work all total up to being workplace discrimination. The study was conducted over the
course of 2 semesters of learning during from the Summer 2012 to the end of the Spring 2014 semester.
He counseled my on many occasions out of the kindness of his heart. While his counseling sessions were
not official psychological evaluations, I request that the information provided from Dr. Manual be
admitted into evidence to support the grievance and discrimination and workplace issues presented in my
case. In the study, the merits of my discrimination case became more clear. The results of the statistical
analyses conducted will be provided in a supporting exhibit along with a letter from the Sociology Doctor
at Howard University explaining how he counseled me on many occasions to help me through such a bad
situation at the FERC Agency. and because it became evident through the studies that which studied how
(See Exhibit on Discrimination Statistical Analysis)

The additional basis for my discrimination complaint is detailed below:

A.  **Disparate Treatment Theory (Intentional Discrimination)**
    i.   1. Failure to convert you to a career conditional employee, at the discretion of the agency, while
         other students trainees outside of your protected class have been.
B.  **Disparate Impact Theory (No Intent to Discriminate, but a disproportionate impact on your protected
    categories)**
    i.    Denial of a step increase within the student trainee program.
    ii.   Denial of a grade level promotion within the student trainee program.
    iii.  Failure to place you in the recent graduates program, not when the program became effective on
          July 11, 2012, but when you found out you were not in the program.
    iv.   See http://www.eeoc.gov/eeoc/meetings/2-16-11/urban.cfm:
    v.    A disparate impact violation is established when an employer is shown to have used a specific
          employment practice, neutral on its face but causing a substantial adverse impact on a protected
          group, and which cannot be justified as serving a legitimate business goal of the employer.[2] No
          proof of intentional discrimination is necessary. Forty years ago, the Supreme Court first
          recognized that Title VII plaintiffs may be able to sustain a viable employment discrimination
          claim without alleging or proving discriminatory intent in the case *Griggs v. Duke Power*.[3] In
          Griggs, the Supreme Court held that the employer's standardized testing requirement prevented
          a disproportionate number of African-American employees from being hired by, and advancing
          to higher-paying departments within, the company.
    vi.   Two decades later, in 1991, Congress codified the requirements of the "disparate impact" claim
          Griggs had recognized.[4] That provision at 42 U.S.C. § 2000e-2(k) states:
    vii.  (1)(A) An unlawful employment practice based on disparate impact is established under this
          subchapter only if-(i) a complaining party demonstrates that a respondent uses a particular
          employment practice that causes a disparate impact on the basis of race, color, religion, sex, or
          national origin and the respondent fails to demonstrate that the challenged practice is job
          related for the position in question and consistent with business necessity . . . .Thus, a plaintiff
          establishes a *prima facie* disparate impact claim by showing that the employer "uses a particular
          employment practice that causes a disparate impact" on one of the prohibited bases.[5]
    viii. As mentioned, an employer may defend against liability by demonstrating that the practice is
          "'job related for the position in question and consistent with business necessity.'"[6] Even if the
          employer meets that burden, however, a plaintiff may still succeed by showing that the employer
          refuses to adopt an available alternative employment practice that has less disparate impact and
          serves the employer's legitimate needs.[7] **This is where discretion comes in.**
    ix.   Proof is another issue. As the Commission is well aware, in disparate impact cases, there is no
          evidence of intent to discriminate. Thus, as discussed, in order to prove a prima facie case of

disparate impact, the burden is on the complaining party to show a particular employment practice, which cannot be justified by business necessity, has a disparate impact on a protected class.[8] The Supreme Court has explained[9]:

x. Plaintiff's burden in establishing a *prima facie* case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged ... [Then], causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group ... [Moreover], statistical disparities must be sufficiently substantial that they raise such an inference of causation.

xi. The Commission has taken the position that evidence of adverse impact exists when the selection rate for any race, sex, or ethnic group is less than four-fifths (80 percent) of the rate for the group with the highest rate.[10] In other words, the selection rate for Hispanic applicants, for example, would need to be less than 80% of the selection rate for white applicants to establish disparate impact.

xii. **Getting that statistical evidence for the pool of student trainees will be important.**

xiii. During my work experiences, I noticed that many assignments were taken away from me and given to other Civil Engineers in the Project Review Branch, because "they had specialized experience in the matters." I believe this falls under special emphasis categories of discrimination and the fact that I was not advanced or treated equal while at the Commission, as a protected class, is disrespectful to me and any other people that have been treated this way. I recommend Charles Cover be removed as a student trainee for Civil Engineers due to his role in this discrimination fight I have not received any aid with. I was the only black male in the whole division; I worked at a work station while everyone else received offices; I was constantly told that I'm not equal to everybody else; I trained employees who came in after me and they were advanced beyond me; among many other things.

xiv. This matter is not a simple one which can be discarded in someones trash box after one email. That is why it would be easier to receive documentation from Charles Cover to send to the board. He will definitely not be the only Civil Engineer that I have worked under, and this is another disadvantage that I face (one where I could have had 3 whole years of Civil Engineer Training but have been removed from my position in a soft exit fashion--blackballed).

In a MSPB Initial Decision dated April 22, 2014, the MSPB Administrative Judge Sherry A. Zamora stated, an employee may file an individual right of action appeal to the Boar from an agency personnel action alleged to have been proposed, taken, or not taken because of whisleblowing activities, that he was subjected to a personnel action, and that he raised a specific claim of reprisal regarding the alleged actions to the Office of Special Counsel and that proceedings before the Office of Special Councel have been exhausted. The complaint with the Office of Special Councel was filed on March 12, 2014, and on February 18, 2015, Marcus Gaskins filed an Individual Right of Action appeal with the Board's Washington Regional Office in which claims were made that the agency's action terminating from the position held as a Civil Engineer in Training Student, GS-7, with FERC, effective May 12, 2014, was in retaliation for whistleblowing activity. A conference call was conducted on April 2, 2015, in which the agency moved to dismiss the appeal even though it was evident by the commission that a mixed case, such as the one presented here, is not capable of being ruled on by the EEOC. This was the biggest issue problem that was not identified to Marcus Gaskins, but was optimized upon by the FERC agency. In the Office of Special Counsel document dated December 8, 2014, on Page 3, the OSC states that authorized appointment of individuals actively pursuing an educational program, completed beforehand such as a Bachelor's degree would not qualify. However, evidence has been provided to the FERC Agency, to the EEOC, and to the District court that shows how the FERC agency did not comply with this requirement for a Caucasian male who graduated prior to appointment and was converted afterwards and fell under the same condition as I did. This in itself proves my complaints. Regardless of whether I was eligible in the view of the OSC, because the agency was converting individuals, I was supposed to be converted as an equal employment opportunity practice and when this was brought to the attention of the agency, it was disregarded and I was retailiated against.

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **9 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

In the statements presented to the Merit Systems Protection Board, the FERC Agency requested that the case be dismissed due to the pending EEOC case. In a telephone conference call with me, the FERC Agency Representative, and the MSPB Judge, the MSPB judge stated the MSPB would dismiss the case pending the reopening of the case at a further date. The MSPB judge stated he would issue a dismissal pending reopening of the case for a set date, and would be ready to dismiss the case again, pending the reopening of the case after the results are provided for this EEOC case. Given this information, the MSPB judge stated an order would be issued. On June 11, the EEOC Agency finally reviewed all of my requests to amend my EEOC case and accept all of the denied issues, but then determined I had a mixed case and attempted to dismiss the case. On that day, I contacted EEOC Administrative Law Judge Jacqueline Ivey and was advised by her to file a motion to remove Wrongful Termination from my items that were added to the Amended Accepted issues. In response to her advice, I filed a motion with Madeline Lewis to have wrongful termination removed. This motion was never accepted nor was it ruled on; therefore wrongful termination is still an accepted claim in this case. The FERC Agency Executive Director then issued a letter, which was not very clear to know was the final agency action letter that the MSPB wanted to see and the MSPB stated on the phone that they wanted to know what the EEOC was going to say about my case, not just what the FERC agency was going to issue in the final agency action letter. The FERC ED agency prematurely dismissed my case. Then, when I notified Administrative Law Judge Ivey at the EEOC, Judge Ivey told me to file an Appeal with the EEOC Washington Field Office because she was still reviewing my motion to remove wrongful termination from the case. The FERC agency ED Anton Porter then filed a response to my appeal stating that I have an ongoing MSPB case that is a similar matter and then the FERC agency reviewed my case for a year and a half. When I contacted the agency over this time, I was told that my appeal was accepted and sent back to Judge Ivey for her review and that I would get results of my case soon. The results that I received were none of the information I was told I would receive, and instead, I was given a determination that the EEOC cannot rule on my case. They also did not give me the right to file with the MSPB and just said I missed my opportunity to have my case ruled on. Upon reconsideration filing, none of my information sent in for reconsideration was really reviewed and I was told that I only have the right to file a Civil Case in the US District Court. This is really a messed up process and does not help anybody even though it is supposed to be here to help.

Charles Cover: For some reason, Charles Cover established an idea to state that I could have completed my Master's of Engineering Degree, which I started in the Fall 2011, in 2 years. While a student can complete a Master's Degree in 2 years, Mr. Cover clearly did not have any experience on the workload expectations required to fulfill the required 6 credits that the FERC Agency made me do, instead of the 4 credits that I should have been required to do per semester. My attempts to expedite my education process are documented with the summer course I took at Howard University for Advanced Statistics, Level 1. Taking a graduate level summer course while working full time was a very challenging endeavor. In addition to the challenges of attendance while working full time, there was financial aid complications which resulted in Howard University providing me with a grant to cover the courses which were already stated to be covered by Financial Aid. Since the FERC Agency did not provide tuition assistance, all of these additional factors were not even brought to anyone's attention and if it were not for the kindness of the Financial Aid Director at Howard University, I would have needed to transfer. I still do not understand where the idea that I could have completed the program faster originated from. I never interviewed with Mr. Cover before hire, nor was my Cooperative Education Program Agreement completed prior to my initial start date, and the topic of my completion of the program was never a topic until I started to notice the discrimination that was happening to me. When I started working for Mr. Cover, he stated at the end of this program, at the very least, he would get me a job at one of the regional offices. I can almost guarantee that he will deny ever making this statement.

Chrystal Martin: Ms. Martin was one of the worst out of all of the people over top of me at FERC. She had a really bad attitude or was just not people oriented and abused her power in any way she could. She was the main person forcing me to take 6 credits a semester, thinking that for graduate students 6 credits a semester was considered part-time to fulfill my Cooperative Education Program Agreement requirements to be able to work full time. She also teamed up with Charles Cover and Mike Mrozowski against me or was the leading member of this team to ensure that I would not be able to advance within the organization and to ensure that I would not be converted to a permanent position. Her affidavit and Charles Covers affidavit are in complete conflict with regards to whether I am allowed a step increase, a grade increase, and promotion potential. This is really confusing since

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **10** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

the two of them were in constant collaboration with regards to discriminating against me. Ms. Martin should be
removed from office and I hope she does not get her retirement.

Mike Mrozowski: Mr. Mrozowski was the most vocal individual towards my discrimination and he would
investigate ways to ensure that I would not receive fair treatment within the program to which I was assigned.
Upon hire, I was ensured that I would be able to have 120 days after graduation to apply for positions, if I was not
converted to a permanent position, noncompetitively. When I was forced to sign the Pathways Program, even
though I was not rolled into the correct one, I was informed that I would be grandfathered into the Federal
Government by Doretha Geter. Mr. Mrozowski was there to make sure that nothing of the sort would happen
with me an instead used the Pathways Program as a means to ensure that I would no longer have the 120 days
after graduation to be able to work while searching for a new position. It has been my understanding with laws
and applicability, that if you are signed into a law and/or program, and the law changes, then that law is still
applicable to any and all people who it applied to during the time when the law was valid. Apparently, Mr.
Mrozowski did not have any training on these matters when he was placed into office. If he is still in office, please
remove him from being overtop of such programs because he does not possess the skills to successfully ensure a
Pathways Recipient has a Pathway into the Government.

Sidney Chapman: Mr. Chapman is a black man who I was referred to by the three union representatives at the
FERC agency to resolve all the issues they believed I was experiencing. I was referred to the union representatives
by Madeline Lewis might I add. Mr. Chapman is a Black man. I did not have any issues with Mr. Chapman until the
discriminative methods of the FERC agency placed Mr. Chapman at the forefront of my discrimination complaints
in an attempt to discredit my complaint. While it is disheartening that he would take such a role to be the main
person discrediting a discrimination complainants position by setting up meetings to create conflicts and establish
a record of conflict, I was able to persevere through these complications effortlessly. For example, after multiple
years of analyzing regulations for the FERC Agency with regards to the Office of Energy Project, Mr. Chapman set
up a meeting with an individual who attempted to tell me that I was misinterpreting the regulations with regards
to the way the agency was discriminating against me. My case has already been proven, nonetheless.

Madeline Lewis: Ms. Lewis is a black woman who aided me in obtaining the position to which she is so driven to
destroy me credibility of a case on. Her belief is that I should not be upset that the investigative report provided to
the agency is bias solely because I would not have the job, which I no longer have, if it wasn't for her. Surprisingly,
Ms. Lewis and Mr. Chapman conspired together with Mr. Anton Porter, to figure out a way to build a case against
me with false allegations of misconduct and very uncomfortable methods of removing me from my position with
pay 3 months before I graduated. I am very disappointed in how the EEO at FERC is so unsupportive for the people
they put into the organization.

Anton Porter: Mr. Porter is a disappointment. He is a black man too. He did not do anything to aid in the
discrimination against me. He states that he believes in the EEO process, yet undermines the process nonetheless.
I cannot begin to express my disappointment for this man.

Doretha Geter: Ms. Geter was the first person to inform me that the Office of Energy Projects and the Division for
Hydropower Licensing have very discriminative people in there. However, Ms. Geter will be the first person to
deny ever saying these words. She was a firm advocate to be my mentor until all of the discriminative problems
arose.

Edward Gingold: Mr. Gingold did not properly document my entire complaint when I went to him in confidence to
file a discrimination complaint, and this resulted in an incomplete complaint. Mr. Gingold repeatedly referred to
me as a Negro in communication even though I expressed that I would not like to be referred to as a Negro by him.
This disregard is blatent disrespect and should not be acceptable behavior from a Senior EEO Counselor who has to
handle multiple complaints with Black people.

Toby (Security Safety Officer): Upon receipt of the FERC decision to have me removed, Mr. Toby would not allow
me to get any of my belongings, nor did he allow me to get the copies of my orders sent out.

(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and 0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket No. DC-1221-15-0430-W-1)

### Filings Listed (For official copies, please request from Marcus Gaskins):

#### July 30, 2013, Discrimination Notes Day1 Incidents to report on:

- No advancement due to non-equal employment status of a minority intern
- Email with Kirk and Chrystal taking a stance on mistreatment in the program for appearance of a bad employee
- Incident of ATMS with Chrystal Martin and Shante-Collier Haygood where Chrystal Martin discriminated and made authority be removed from a person who has authority to process requests, (reference discussion with Mellissa Thomas before incident became real issue)
- Incident with Chrystal Martin regarding timecard and attendance continuously to the point where a complaint to her supervisor is being developed
- Assignments being routed through people with white skin complexion for correct perspective on the way assignments should be completed and then reprimanded for not completely changing all of the recommendations while also being reprimanded for changes made from the white person who changed everything and made things no longer valid. Example: New person, Ashish Desai, who I am training sometimes, comes to me on project I wrote letter for that was completely altered after Kelly Houff, new branch chief, gave ok to issue comments, identifies something which was not initially in my letter and wonders why the assignment is wrong.  I explained to Mr. Desai that I do not have control over what happens in the process, (which is discrimination process), that I must participate in once my letter is issued.
- Assignments I am team lead on and process all the way through until major filing comes in, which I have more than enough experience to process, and which normally stays with the team lead, gets stolen away from me by a white person and processed without acknowledgement of the assignment being missing or processed by someone else
- Meeting with Kirk, Heather and Chrystal where my intern status makes me unequal
- Project Review Branch discrimination of most senior experienced co-workers, Henry Woo and Patricia Gillis, and selection of Jeremy Jessup due to the Henry Woo and Patricia Gillis
- Engineering Resources Branch discrimination of #2 supervisor, Mo Fayyad, and selection of Ms. Houff (Kelly Houff) due to Mr. Fayyad's race/skin complexion
- Non-referral of my application to selecting official for Historian position in Project Review Branch due to race and discrimination through position as an intern by Steve Eskin and selection of white person
- Non-referral of other two positions to selection official when more than qualified for position
- Summer program conversion of other interns regardless of whether degree was already received or not (manipulation of system) due to skin complexion of white
- No invitation to Hydro Conference, which everyone attended because of unworthy intern status
- GIS Lab fix belittling with Kirk, Tony, and Jeremy
- Rejected teleworking and AWS due to non-equal intern status
- Rejected training and conference attendance due to race and discrimination; example—Stephanie Offutt (an intern under minority William Guey-Lee who is retired) allowed to experience multiple inspections after authorized travel/flight/experience opportunities due to her race, skin color, and supervisor being a minority and not discriminating
- Treatment as though I am unequal even though I have had my Bachelors Degree all along
- Treatment from Chrystal Martin as though I am not complying with every requirement of the program and providing my schedule and registration of classes in advance
- Treatment as though I am equivalent to an undergraduate intern, Stephanie Offutt, who did not complete assignment given to her from my supervisor and I would have to do the assignment after hours to not look like we both are incompetent
- Not receiving an office and being forced to work at a work station due to my race and color
- Being used to fix many of the major problems in the division and not being recognized for the work that I have done
- Not being considered for promotion or advancement

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission     **12** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- Not being considered for bonuses even though I have gone above and beyond my job description
- Not being on the google calendar group as a Project Review Branch Staff
- Not being on the DHAC database Project Review Branch Query Pie Chart for Completed Assignment (as of annual review time for 2013)
- Not being treated as equal individual, due to race/complexion, and being discriminated upon through the intern program
- Being laughed at by Mike Mrosowski and Sidney Brooks in meeting where I proposed a solution to this institutional racial discrimination that is within FERC
- The discrimination for positions of upper management, such as Branch Chiefs/Deputy Division Directors/Division Directors/Deputy Office Directors/ and Office Directors within the Office of Energy Projects
- Madeline Lewis attempting to correct discrimination issues within the agency through the student/co-op/pathways/stars program and this program being used as the main means to fulfill race requirements without actually hiring minorities and the mistreatment of the minority individuals within the program
- Charles Covers statement in my 2012 review that I am not a federal employee'
- Madeline Lewis' rebuttal statement which says I am a federal employee in a consultation session
- Union representatives statements, after I did a non-union participant request for consultation, since I am not worthy of any other equality opportunities, of that a conversion would take place or advancement is possible in the where the white manager is not advancing because of race a minority is because my skin complexion was referenced and an attempt to correct or amend the matter by setting up an appointment which turned into a major discrimination awareness event occurred with Sydney Chapman and Mike Mrosowski
- What makes a white person more equal to a federal employee position than a minority

### *March 17, 2015 Pleading: Correction of Information in Response to Agency Filing Dated 3/17/2015*

- I have in no way attempted to slow down my graduation process.  In many instances, I was rushed by Charles Cover, my direct supervisor to graduate faster.  I took six graduate classes a semester and even one very challenging three credit summer graduate class while working full-time.  I was advised that I had to take six credits, which on average is the half-time requirement for undergraduate students, to be able to work full-time at the agency.  I had to get this requirement re-evaluated since I was a graduate student.  This did not occur until I was almost finished my degree.  The agency treated me as though I was an undergraduate student for internship requirements, but my supervisor assigned me many assignments which were much more difficult than that of a GS-7 intern.  I was often disadvantaged by not being allowed to share an office with someone, not being allowed to telework, being told that I am not a real government employee, etc.; but then I was given the most challenging work to clear up backlogs of assignments, make database reviews for updates, not given grade increases , etc.; while my work assignments were equal in nature to my co-workers who are all GS-12 and GS-13 employees.
- The Agency did not allow me to file for advancement in my EEOC complaint, and only wanted to address conversion issues, which it states were untimely filed.  Therefore, I find it difficult to understand how the agency would like to have this appeal dismissed when this appeal will properly address the advancement issues throughout the course of my employment as a Excepted-Conditonal Federal Employee.  The FERC union representatives stated that the normal probationary period for federal employees is 1 year and the normal requirement for career-conditional status is a bachelors degree.  They were appauled that I had been working for the agency for more than two years, and working towards a master's degree, and I had not been properly advanced within the agency.
- Additionally, my filing records and the Merit Systems Protection Board decision documentation indicates, my MSPB appeal could not be properly considered until I have completed an Office of Special Counsel Complaint.  The OSC states I "may seek corrective action from the MSPB under the provisions of 5 U.S.C. §§ 1214(a)(3) and 1221 (individual right of action) for any personnel action taken or proposed to be taken against you because of a protected disclosure and/or protected activity that was the subject of your complaint to this office.  You may file … with the MSPB within 65 days after the date of this letter." (the OSC letter dated December 29, 2014).

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission    **13** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- To set the records straight, I was placed on administrative leave, after I attempted to get in touch with the attorney who would be the person I needed to communicate with to get discovery for the first appeal that I filed with the MSPB. No attorney had been assigned to the matter, and everyone who I spoke to acted as though the MSPB Acknowledgement Order was not a standing order for Discovery requests. After a couple of months of being on Administrative Leave to investigate a false claim of misconduct, I was told that there was not enough information to consider my actions misconduct. This was merely a ploy tactic used to give me a soft exit out of the agency, or to provide me with some sort of relief since my doctor provided a note that explained that my treatment on the job is affecting my health with all of the school pressures. The major point which should be looked at for this part of the appeal, is the fact that I was told and ensured that I would have 120 days after the date of my graduation to find another position within the agency, or not within the agency, if one was not provided for me. Then, I was not given any opportunity to find another position, and the agency waited 120 days after I was terminated, to create the position the agency said they did not have for me.

## *July 30, 2013, and August 12, 2013, Initial Complaint (Missing EEO Counselors Report-See EEOC Exhibits for copy of report)*

Please note:

After my first annual review, in 2012, where discrimination occurred, I went through a process of emailing my administrative officer about my concerns, then when no acceptable solution occurred, I emailed the human resources department, then I spoke to Madeline Lewis who referred me to James Hough, Jerry Williams, and William Cary for a potential solution, who in turn told me there is discrimination occurring and identified themselves as the Union representatives. Then, the Union set up and appointment with the Director of HR, Sidney Chapman for resolution of the discrimination issues. Sidney Chapman deferred the problems to Mike Mrosowski, who spontaneously attended the meeting and said the "Pathways program" that just came into effect is the program where I am not going to get a pathway into the government and am not allowed to advance in the government either. When I proposed solutions such as to get experience in the program at the next level to be able to apply competitively for FERC Civil Engineer positions, which start at GS-11, 12, and 13, I was laughed at by both Sidney Chapman and Mike Mrosowski after Mike said you want work at the next level with pay at the lower level. After this meeting where I did not get my answers, I requested assistance from the Office of Personnel Management to determine whether the new pathways program I was put under allows for advancement after explaining my situation of being discriminated on. My request for assistance was forwarded to Amanda Perry in HR at the FERC who said advancement is up to my supervisor. These emails were also blind copied to Madeline Lewis, and once the Union involvement began, the Union representatives were Blind Copied as well. To the best of my knowledge, the alternative dispute resolution does not work and was used to discriminate on me and keep me from advancing, even though the administrative officer, who is now retired, said I would be advanced and not discriminated on if I obtained a Fully fulfilling performance standard that Martha Jones also made be a mandatory thing after Steve Eskin in HR told Charles Cover, my supervisor many incorrect things over the phone to help Charles Cover develop a discriminating mindset and perspective toward me. After all of this occurred, Madeline Lewis advised me to talk with Jeff Wright, Director of OEP at FERC, and provide him with my information that supports my statement that I have a lot I could offer FERC and provides examples of all of the things I have done that goes above and beyond my job description. I did a draft version of this and provided it to Jeff Wright, Edward Abrams, Madeline Lewis, Heather Campbell, Charles Cover, Mike Mrosowski, and the Union. Jeff Wright stated that the sequester is causing this office to not hire and bring people in. This is not the most accurate statement because a few days later, at the OEP years of service party, a bulletin was presented, which is still available for viewing that I have took a picture of, that shows a total of fifteen new Caucasian people hired in the office and only one minority. Edward Abrams said frequently that the Division does not have any money to put an FTE request in form me but concurrently approved multiple positions for people to be hired within the division and I was not referred to the selecting official, by Steve Eskin, on any one of them.

Due to the severity of my complaint and the fact that my complaint is not supported by an attorney at this time, I will submit my complaint to the Chairman of the Commission, who is identified on the Notice of Right to File a

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission        **14** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

Discrimination Complaint, dated Thursday, August 01, 2013. The Office of Energy Projects and the Office of the
Executive Director are the two offices within the Federal Energy Regulatory Commission that discriminated on me
and continue to discriminate on me. The names of the people who discriminate on me are Mike Mrosowski, Steve
Eskin, Amanda Perry, Nancy Bryant, Jeff Wright, Chrystal Martin (and the people under Chrystal Martins
discriminating ways), Ed Abrams, Charles Cover (my supervisor), and Jeremy Jessup.

I am currently working for the federal government at the Department of Energy, in the Federal Energy Regulatory
Commission. The address for the office which I am referring to is 888 First Street NE, Washington, DC 20426. My
current amended title is a Student Trainee (Civil Engr) and my grade is a GS-0899-07-02 (which has not been
responded to about the step change even though the question on step has been asked by email).

The ways in which discrimination has occurred have been identified to Edward Gingold and are provided below.
The main discrimination items are by race (my minority race of other), and by color (my color of Black), and
underlying discrimination items to note here are discrimination indirectly by gender and national origin; as well as
by age, even though the age discrimination was not toward me.

The issues discussed with Edward Gingold are major issues which need to be provided in this complaint in more
detail since our counseling session was one to two days long. Anne Miles is the only one in management, up to
Jeff Wright (OEP Director at FERC), who had not yet been notified of my treatment but I was working on a
complaint about Chrystal Martin and front office treatment on time friction issues and ATMS friction issues since
Anne Miles is Chrystal Martin's supervisor. My complaint was never filed due to the institutional discrimination
which I explain is taking place at FERC. The Human Resources sector of the Office of the Executive Director's
discrimination problems I note above and below are issues which should really be corrected because everybody as
to be processed into FERC through Human Resources, (a Merit Systems Protection Board matter has been denied
to me due to discrimination).

A list of the issues for my discrimination complaint is provided below:

- My requirement only lists 640 hours as a requirement for eligibility to be considered equal or
  noncompetitive, which is roughly 15 weeks, and I am at two years worth of experience, which is 104
  weeks
- I have been required to be a Civil Engineer in Training, while Kelly Houff is a Caucasian woman has been
  promoted to the Engineering Resources Branch as a Branch Chief in management with Civil Engineering
  as a background and she never was forced to get her Professional Engineer License
- I have been required to get my Masters degree in Civil Engineering since I have earned a Bachelor's
  degree, while Patricia Gillis is a Black woman who is currently at her maximum non-competitive level,
  without ever having to earn her bachelor's or her Master's degree.
- Even though I am overqualified for the position which I am in, I have not been considered equal enough to
  be advanced by my supervisor, Charles Cover, who is a Caucasian male, and been told this two years in a
  row at my annual review meetings.
- I have not been advanced due to non-equal employment status of a minority intern.
- Mistreated due to unequal status of overqualified intern by the entire Caucasian management chain of
  command I am under up to the Office Director.
- All minority positions are filled with Caucasian. Specifically, Martha Jones was the last administrative
  officer for OEP and she was African American. She told me that I would be promoted to the next level if I
  get a Fully Performance evaluation after enforcing that I get evaluations every year. She also said that
  other offices promote interns within the program. However, this information became invalid once
  Martha Jones retired and nobody in my grievance/ alternative resolution process for an entire year,
  wanted to treat me fairly about this or acknowledge the facts presented.
- All of the current management I see ate Caucasian: 5 Branch Chief, Deputy Division Director, Division
  Director, Deputy Office Director, and Office Director.
- Chrystal Martin, the new Caucasian administrative officer's discriminative methods. Specifically, multiple
  incidents with ATMS, WebTA, and discussions over program requirement identify specific inequality

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission **15** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

outlook she has toward me as a minority intern and has set up ways through ATMS to discriminate on her two African American super users whom she micromanages and allows to provide difficulty with any ATMS requests that must be processed through them.

- Assignments being routed through people with Caucasian skin complexion for correct perspective on the way assignments should be completed and then reprimanded for not completely changing all of the recommendations while also being reprimanded for changes made from the Caucasian people who changed everything and made things incorrect. Specific example is one where a new minority person, the only one out of the fifteen Caucasian people hired, and who I am training, Ashish Desai, comes to me on project he received with complaints on the final product Jeremy Jessup altered, project number 184, sub-docket 237. I wrote letter for that was completely altered by Jeremy Jessup after Engineering Resources Branch Chief gave okay on, due to discrimination process Charles Cover tells me to go though of a Caucasian person in the branch. Ashish identified errors which were removed by Jeremy Jessup and Ashish wondered why the letter was wrong and why he was assigned the review when I was also assigned the review. This discriminative process also incorporates assignments being assigned to multiple minority people at the same time while being unaware of the double assigning.
- Assignments I am team lead on and process all the way through until major filing comes in, which I have more than enough experience to process, and which normally stays with the team lead, gets stolen away from me by a Caucasian person and processed without acknowledgement of the assignment being missing or processed by someone else
- Meeting with Charles Cover (Kirk), Heather Campbell, and Chrystal Martin where my intern status makes me unequal to be eligible for Comp Time, Advancement, and my employment at the agency was discussed because of Chrystal Martin
- Project Review Branch discrimination toward most senior experienced coworkers, Henry Woo and Patricia Gillis, and selection of Caucasian people, Diane Murray and Jeremy Jessup as second in command
- Division of Hydropower Administration and Compliance's discrimination toward Engineering Resources Branch's second in command, Mo Fayyad's (who is Hispanic/Latino) selection as next Engineering Resources Branch Chief when he is most experienced, and selection of Kelly Houff (who is Caucasian)
- The non-referral of my application to selecting official for multiple positions within the agency, even though I am over-qualified and have provided a complete application and do not get considered for FERC-wide positions nor am I considered for competitive for only federal employee's positions. As a reminder, I have been working for FERC for two years as a GS-7
- Selection of Caucasian people for almost all of the positions in the Office
- Non-referral of other positions to selection official due to my complaints with everybody talked about in the noted section above
- Summer program conversion of other interns, specifically Ryan Stertz (a Caucasian male who is not in OEP), was converted after the 2012 summer program, which I participated in and received a certificate which I took a picture with Deputy Director, Ann Miles. This certificate was provided to Edward Gingold during counseling.
- I was intentionally excluded from conference and travel training opportunities, due to unequal perception from my Supervisor Charles Cover. Specifically, Stephanie Offutt (a Caucasian summer 2012 intern in my division under William Guey-Lee, former Asian Engineering Resources Branch Chief) was sent on a major double dam inspection trip in the summer 2012 inspection, but I was rejected training experience of this nature due to Charles Covers discriminatory methods and treatment process. This becomes a matter of comparison on treatment of Caucasian management toward minority employees and minority management toward Caucasian employees. Stephanie Offutt was authorized travel, flights, and experience opportunities due to her race, skin color, and the fact that her supervisor was a minority who did not discriminate on her. Another specific example is the non-inclusion of the 2013 Hydro Conference, which everyone attended due to unequal treatment and inclusion in division and branch matters of importance.
- GIS Lab incident with Kirk, Tony, and Jeremy, where I was told I was not equal or equivalent to coworkers and belittled after getting a meeting to fix the problems with IT by talking to Isaac Hernandez during the timesheets change to WebTA briefing in the Commission meeting room

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **16** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- Rejected teleworking and AWS due to non-equal intern status when other summer interns say they have
  been authorized teleworking and AWS. Specifically, Stephanie Offutt was authorized AWS.
- The fact that many Caucasian and few minorities are accepted into FERC with only a bachelors degree as a
  minimum qualification for the GS-7 without any experience, and I am not considered equal even though I
  have had my Bachelors Degree, two years of experience, and two years of graduate school.
- Aggressive, overbearing treatment from the representatives of the front office for the Office of Energy
  projects, through management of the new administrative officer, Chrystal Martin, and also
  delayed/incomplete responses discriminatively.
- Treatment as though I am equivalent to an undergraduate intern.
- I have not received an office, even though less experienced and more recently hired federal employees
  always get an office.
- Working hard to fix many of the major problems my supervisor identifies and asks me for help on but not
  being recognized as being outstanding on my performance, specifically Robert Bell, Vincent Jones, and
  Henry Woo are people who I have aided to complete assignments and update databases and these are
  three people who recently moved into a window office.
- Not being considered as an equal individual for consideration on treatment for promotion or
  advancement
- Not being considered for bonuses even though I have gone above and beyond my job description
- Not being on the Google calendar group as a Project Review Branch Staff
- Not being on the DHAC database Project Review Branch Query Pie Chart for Completed Assignment (as of
  annual review time for 2013)
- Not being treated as equal individual, due to race/complexion, and being discriminated upon through the
  intern program
- Being laughed at by Mike Mrosowski and Sidney Brooks in meeting where I proposed a solution to this
  institutional racial discrimination that is within FERC
- The discrimination for positions of upper management, such as Branch Chiefs/Deputy Division
  Directors/Division Directors/Deputy Office Directors/ and Office Directors within the Office of Energy
  Projects
- Identification from the equal employment opportunity sector of OED, that the minority program is,
  unaware of the discrimination ways apparent, to fulfill minority quotas even though the minorities who
  fill the quotas are not permanently hired like the 15/16 ratio of Caucasian to minority that OEP
  presented to the office at the last office years of service celebration.
- Charles Covers statement in my 2012 review that I am not a federal employee, even though the equal
  employment sector of OED states that I am a federal employee and should be considered equal.
- Union representative statements of racial and color discrimination. Specifically, William Cary, Jerry
  Williams, and James Hough's agreement that my conversion would have take place if I was Caucasian,
  that my status should have been converted over from probationary after the first year, that my
  bachelors degree should have been more than enough to advance me, and that my advancement is
  possible in the situations where my skin complexion is Caucasian. The union's attempts to
  amend/correct these matters are identified in the supporting emails I provide with my formal
  documentation. Specifically, meetings with Sidney Chapman and Mike Mrosowski (HR) meeting emails.
- What makes a Caucasian person more equal to a federal employee position than a minority
- Not considered equal on eligibility to have a paperclips card for supplies to complete my assignments.
  New people are allowed a paperclips card and this is another way example of inequality of employment
  through discrimination of the minority interns
- Multiple instances of branch meetings where my assignment reviews experience is downgraded to being
  not as focused on the issue, not equal to other individuals, and not acceptable as a way to properly cover
  all the aspects of a review. Even though my review entail a close look at the requirement and a
  comparison of the requirement with what was filed
- Not considered experienced when I am given confusing assignments which require official records review
  to find requirements or previous Exhibit A and told I am doing something other than my assignment
  when all I intend to do is my assignment review. Viewed as doing something wrong when I identify

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission                    **17** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

    errors or incorrect things that were done which make my review unable to be completed without a
    decision on what is worth fixing.
- Complaint on being removed from team lead on projects where I have done majority of the research with
  incorrect on errors that are accused of being made but were not. Specifically, an assignment that was
  transferred to Anthony Deluca, a Caucasian male who did not do the most thorough review, on the
  submittal of 20 drawings that I initiated the revised filing for after clarifying what is required.  And this
  assignment still has never updated the federal lands identification exhibits, even though this has been
  brought to Anthony Deluca's attention and Charles Cover's attention.
- The Cooperative Education Program Agreements purpose of the cooperative arrangement goal number
  (3) meet equal employment opportunity goals.  And The Co-op program is an effective, relatively low
  cost and accelerated recruitment method to help meet future FERC staffing needs.  These two items are
  used to discriminate on minorities and Black people in the workplace.
- Fifteen of the sixteen people hired in OEP are Caucasian:



- Project no. 1894 and many other assignments given to other people even though I was designated the
  team lead to complete the assignment.
- Repeatedly treated as though my reviews are not viewed as equal to other employees when I have much
  more experience and do better reviews.
- Told my opinion on exhibit drawings is insignificant and wrong. My opinion has been disregarded and not
  taken into account, on reviews, as experienced, verifiable experience
- Not respected as a Civil Engineer or a Two Year Experienced FERC Federal Employee
- Always portrayed by Charles Cover as someone not to go to for assistance and because of that, I am
  treated as not equal or isolated from the Project Review Branch team.  Example, Krista Sakallaris said she
  goes to Anthony Deluca, a Caucasian woman and a Caucasian male and not me because of what Charles
  Cover says.  This event occurred in a meeting the day before I sent her the email that is attached as

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **18** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

supporting documentation. Also, even though I am proficient in the use of ArcGIS (Geographic Information Systems), notes on the few GIS assignments I am given say have Jeremy Jessup show you how to do the GIS assignment. People who are Caucasian are not better at everything and I told Charles Cover at my first performance evaluation that Jeremy Jessup talks down to people. Everyone is supposed to have an equal employment and advancement.

- I never get good reviews from Jeremy Jessup who completely alters an assignment I am working on and makes more errors within his reviews that I have to in turn explain what I did to Charles Cover. These two appear to have some special connection or bond and might even be related. This is probably why the Caucasian is right approach is being imposed on me.

- Identification towards me as a "free-bee" by Ed Abrams and not treated as equal, with credentials, experience, and education, to advance. Also, being told by Ed Abrams that there isn't any funding for management to request eligibility to hire me, while positions are being filled concurrently and I am training new employees.

- Jeff Wrights use of the sequester, when I met with him, as a basis for deferring my advancement to the 2013/2014 fiscal year and Jeff Wright stating that he is not the only one with the authority to convert me over. He stated that management's conversion ability could happen with Heather Campbell and Ed Abrams. I spoke to Ed Abrams already and Heather Campbell said that Ed is the only one with decision making capabilities. Then Ed Abrams said Charles Cover is the one who I have to impress. While Charles Cover says, he doesn't have any open positions since he just hired two people but 6-8 people have retired since I started working, within my division, and only 5 have been new hires, excluding me for the equal employment opportunity. This deferment to take responsibility from multiple Caucasian management people show that this discrimination is a major problem that is taking place in the work-force.

- Robert Bell moved into a window office and probably was promoted shortly after I helped him bring up to date a backed up amount of preliminary permit data sheets into a database after rewriting the datasheets to reflect correct information and showed Robert Bell, Charles Cover, and Ashish Desai how to use Google Earth to bring the already rectified River Basin Maps in and see the more precise and much faster method to complete the River Basin Coding process. Robert Bell moved into a window office and was promoted shortly after I showed him how to do his most time consuming process two-to-three times faster.

- Henry Woo moved into a window office and was probably promoted shortly after I showed him how to do his most time consuming process of Mining Claim reviews for the Bureau of Land Management five-to-six times faster and did 100-to-150 assignments that were over a year old (Old Dog Assignments) and wrote the letter which he signed when I was told I am not equal to sign these letters. Also, I identified that the FERC-587 Federal Land Identification forms, have not been being filed with preliminary permit applications and license applications within the Division of Hydropower Licensing and the Mining Claim review instructions, that I wrote, had to be modified to incorporated other database information to successfully and accurately complete the review. I created the spreadsheet of projects where we do not have the forms, contacted the people, mostly, sent the emails for updated contact information, and wrote the letter for the all of the FERC-587 form efforts to have a better mining claim review process. This letter was also not considered a letter I could sign, from Charles Cover discriminating supervising.

- Vince Jones moved into a window office and was probably promoted shortly after I identified all of the issues in the OEP-IT database for Exemptions, researched all of the different exemption regulations and showed Charles Cover and him just how many problems this database has. This database is now being completely changed.

- Edward Abrams requested that he wanted eight Old Dog assignments (over 1-year old) completed within the 2012-2013 fiscal year at the all hands meeting and I did many more than this myself with the mining claim assignments.

- Credit taken on my work, by someone else (for example, Henry Woo, Charles Cover, Vince Jones), and them being recognized while I am criticized, belittled as an intern, and made to be inferior for discovering real issues (one positive point is that my supervisor attempts to allow correction of the issues I present, later on).

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **19** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- Not being recognized as knowledgeable on the use of the databases that is one of my performance standards and discriminated on in both of my last two performance evaluations to be viewed as an intern, who will not be advanced.  Chrystal Martin's frictional approaches toward me and her secret complaints to my supervisor near the performance standards time is a very discriminative method she has.  I would say that Chrystal Martin is probably the most discriminative person I have encountered in work experience.  Chrystal Martin, who I identify as the most discriminative authority for ATMS and who is the Administrative Officer for OEP, is always attempting to be a negative person who I have to work with.
- I have another discrimination complaint on Charles Cover when he attempts to have unofficial rules for ATMS and make up as he goes rules that he uses to do negative performance comments.
- Complaint on my Team Lead assignments being switched to Caucasian coworkers, by Charles Cover, who do not always do as good of a job as I would in completing the assignments I have been working on, see P-1894 Order which does not incorporate revised Exhibit L Land Descriptions.
- Transfer of Project No. 2687 February 5, 2011 recreation filing review assignment by Charles Cover to Krista Sakallaris, when I initially noticed the assignment was overlooked.  Also, giving Krista Sakallaris project No. 137 recreation assignments when I did the entire recreation review to correct the recreation issues and was supposed to be Team Lead on this assignment.  Then, when I update Krista Sakallaris on what's happening, the day before I emailed her the teamwork email, I am discriminated on by Charles Cover to be perceived as doing her work for her.  This was the meeting where I first identified that there is institutional discrimination after meeting with Linda Baker to get ATMS Query experience to support my discrimination claim.  The P-137 Mokulmne assignment was another old dog (over a year old) that was Christian Olivera, a summer intern's, two year old assignment which nobody wanted to complete or had the know how to complete.
- Complaint on how all of Christian Olivera's old assignments, and anyone else's assignments that are too complicated, or require more research than they want to do, are given to me and when I do my complete review, which doesn't take a lot of time, I am told that I am identifying all the problems, which is bad, by my supervisor who continually uses this as another way to discriminate on me.
- Complaint on being told to route all my emails through Charles Cover, at my first performance evaluation, by Charles Cover for my entire second year because, as an unequal intern, I must be critically not treated as equal; and then told I am overwhelming my supervisor by Jeremy Jessup and Charles Cover, when I do what I am asked to do in both email and conversation, when Charles Cover discriminatingly assigns only Caucasian people to be the acting managers for promotion potential.
- Complaint that the old OEP administrative officer, Martha Jones, said I would be advanced to the next level after one year and that other interns are advanced and have been annually reviewed, but when the first and second annual review took place, all of the people identified as being discriminating people in this complaint, in management kept avoiding the real issue of minority discrimination
- Complaint that if there is a minority promotion, it is an Asian individual and no educated Black people exist in my chain of command up to the Office of Energy Projects level
- Complaint that Doretha Geter says the Office of Energy Project is a discriminatory Office
- Complaint that Madeline Lewis says the student programs are how she helps to get minorities into FERC, and the minorities in the intern program are not converted over similar to Caucasian people, like the Caucasian person on my floor who was converted over last summer in a different office who only had to do one summer program and had only a bachelors degree
- Complaint that I'm made to be perceived as an insistent individual when I am people-oriented, always polite, do whatever is asked of me, and should be treated as an equal with employment

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission **20** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- Complaint that when Linda Jemison did timesheets before the new system, we estimated our leave for four days in advance and made modifications as situations arose, then when the new system came up, the timesheets had to be processed with a citrix token, (which I have even though I was discriminatingly denied telework and AWS because other interns last summer were teleworking and AWS with tokens, ) and I was told I had start putting my email requests in through the electronic system to be approved. I identified that the system malfunctions from time to time and (since I have not been able to work from home and create exceptions of use my work laptop at home) I just try to send emails but as soon as I tried to do this, this was used as a way to discriminate on me equality and treatment by Charles Cover, Chrystal Martin, and even Sheila Lampitoc (who to my surprise, is an Asian woman). This brings forth a Caucasian and Asian discrimination underlying not as well
- There are almost no African people at the Commission, and very few African American people at the Commission. There are few Hispanics, and few middle-eastern people. Most of the people at the Commission are Caucasian and most of the people in management are Caucasian. The only racial alternative accepted appears to be Asian for minority acceptance of equality.
- Complaint that most of the Non-African American minorities hired are graduates of the University of Maryland, which has a discrimination problem that needs to be fixed too. This is normally done because if someone makes it through the discriminating University of Maryland, then they are acceptable to be able to conform to the discriminating way of the world. I know this through my experience in going to the University of Maryland and being discriminated on by multiple Caucasian professors with grades and treatment

There are many corrective actions I am seeking

- I want full relief which must address damages, that is virtually impossible for me, as the complainant to assess from the Federal Regulations for EEO Commission Complaints.
- Resolution offers which incorporate a complete investigation on the discrimination taking place which I have identified
- Prevention and elimination of employment discrimination
- Elimination of the constant overbearing comments and excessive requests to hint at discrimination of inequality for unnecessary additional information progress of degree from Chrystal Martin, Amanda Perry, and Mike Mrosowski, when I provided the information willingly already
- Elimination of attendance concerns because I am always accountable, I work hard, and I am working more that I am paid for most of the time while being under paid
- Elimination on critical evaluation of my sick leave
- Elimination of use of the word intern to discriminate on my race and equality for employment treatment and advancement
- Conversion to a Career Position since I have completed the 1 year probationary period as discussed and told is the issue of discrimination by the Union representatives, James Hough, William Cary, and Jerry Williams
- Correction of the administrative process at FERC which was completely ineffective after my first evaluation where I even requested assistance from the Office of Personnel Management to figure out what is wrong with the Commissions treatment of people
- The review by the EEO Commission on appeal to fully safeguard me against arbitrary and unjust dismissal
- Avoidance of the indefinite status of minority interns used to fulfill minority staff quotas while real hires are Caucasian people and they are put in real offices and treated as equal employee's
- Correction of the manipulating perception of "as an intern being" a "free-bee" being used as a means to have overqualified people teach senior staff how to do their job more efficiently and effectively, while not being recognized for the work that is done and the senior level staff being promoted once the work they do is done more effectively
- Addressing of additional underlying complaint of a racial-gender discrimination of multiple Caucasian women within my branch, my division, my office, and the human resources area

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **21** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- Supervisors having rules they must follow on treatment of employees so that this does not become a real future issue where my employment at the agency is jeopardized
- Corrective pay for entire previous year of advanced level work of at-least GS-13 level work (which will amount to GS-13 pay minus GS-7 pay for an entire year)
- Acknowledgement of advancement problems and discrimination in my Branch, my Division, my Office, and in the Human Resources section
- Increase in GS status and pay to properly reflect level of experience
- Acknowledgement that one year, not two years constitutes advancement requirements, at a minimum for anyone at the GS 7 position
- Acknowledgement that GS 11 is the actual level I should be working at today but have been repeatedly made to feel inferior and without equality within the workforce at FERC
- To be made an ATMS super-user, as recommended by Linda Baker

### *October 5, 2013, Appeal on Denied Issues*

This is an appeal for the Equal Employment Opportunity Commission, on the October 4, 2013, dismissed portions of the discrimination complaint filed against the Federal Energy Regulatory Commission (FERC) on August 12, 2013. My name is Marcus Gaskins and my current mailing address is PO Box 2644, NE, Washington, DC 20013. Please use this address for any correspondence pertaining to this case. The case number at FERC is EEO02013-MCG-001. Attachments to this appeal are:

1.) My initial complaint
   a. Filed with FERC and emailed to the FERC Chairman, the FERC EEO Advisor, the FERC EEO Senior Counselor (Edward Gingold), the FERC EEO Representative (Kadia Givner), the FERC EEO Senior Technical Expert (Doretha Geter), the President of the United States (President Barack Obama), and the FERC Union representatives (James Hough, William Cary, and Jerry Williams; even though I am not in the FERC Union currently and identified that the email was for their information only and I must opt. out of Union assistance during EEO proceedings)
   b. Includes 350 pages of information which is available in electronic PDF format
2.) FERC's receipt letter of the initial complaint filing dated August 14, 2013
3.) The FERC EEO Counselor's report and receipt page dated August 21, 2013
4.) The FERC EEO Advisor's EEO Complaint Partial Dismissal letter dated October 4, 2013
5.) The orders I have completed for FERC since initial hire start date of August 15, 2011

Due to the complexity of my case, this appeal will specifically reference inaccurate statements identified for the items dismissed in the October 4, 2013, letter and will provide additional information on recent events to support my discrimination complaint to help develop a stronger stance that the FERC agency is institutionally discriminating on me and other people.

Under the Dissmissed Issues section of the FERC EEO Advisor October 4, 2013 letter, there are two sections, section A and section B:

Section A states that claims 2-8 and all remaining allegations are dismissed for failure to consult an EEO counselor as to these issues. However, on multiple occasions, I consulted the EEO Advisor (Madeline Lewis), and the EEO Senior Technical Expert (Doretha Geter), both of whom out rank the EEO counselors, and was unaware of any EEO counselor reporting requirements. Additionally, Section A states that I did not seek counseling as to claims 2-8, even though I identified all of the issues in my complaint to the Senior EEO counselor, especially the discriminatory methods of no advancement within the program. These matters should be investigated or factored into a EEOC discrimination ruling and I object to this entire dismissal section.

Section B states that claims 2-3, 6-8, and all remaining allegations are also dismissed for failure to state a claim. However, the claims were identified to Edward Gingold, throughout the two-day counseling process and provided by email to Edward Gingold on August 12, 2013 (as discrimination race, color, with underlying gender and national origin). Currently, there are no black men in my branch (the Project

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission                **22** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

Review Branch) and no black men in my division (the Division of Hydropower Administration and Compliance. Additionally, all of the managers are white.

Section B, paragraph 2 states that I fail to assert that I was treated differently than other student trainees, but this statement undermines the acceptance criteria upon which is identified in the accepted issues portion of the letter and I object to this.

Section B, paragraph 2 also states my assertions as a student trainee, where I was not afforded the same benefits as career employees does not amount to prohibited discrimination, but the cooperative education program agreement stated that this program is used to meet equal employment opportunity goals. Therefore, the Commission is stringently standing behind accepting that it is allowed to use this program to discriminate by meeting equal employment opportunities temporarily while not providing an equal setting for advancement or treatment across the discrimination identified areas of this complaint and appeal. The equality notion that is referenced in my complaint should be the reference towards equality to other federal employees in everything identified and tried to be dismissed under this section. Therefore, I object to this statement, it is argumentative and very discrimination in nature.

Section B, paragraph 2 then goes on to state my allegations regarding Chrystal Martin , in claim 8, does not rise to actionable discrimination, but the FERC did not even try to investigate or research this issue clearly. If the FERC had researched this issue, they would have had facts regarding how Chrystal Martin only hires women under her, she then categorizes them for treatment by discriminating on black people more. For example, the three people working under her now are Caucasian, Asian, and Black but the black woman has a work station and the Caucasian woman and asian woman have a joint window office. The window offices have clearly been reserved for GS-14 level employees and this reinforces the fact that I stated in my initial claim that the only minority that is promoted or partially treated equal are asian people. Therefore, the FERC statement there is false and I object to the FERC stance on this paragraph too.

Section B, paragraph 3 continues to provide more false statements and is a very argumentative paragraph which means that the matters should be investigated, fixed, and ruled on in this appeal. I strongly object to this paragraph. The first sentence states that I broadly allege I was not referred for other positions and failed to identify the vacancies for which I applied and were excluded, but I provided all of the positions I applied for in my initial complaint (refer to pages 75 through 87 in my initial August 12, 2013 complaint). If it is acceptable for the FERC to make false statements as the basis for dismissing an EEO complaint, then the EEO acceptance and dismissal review process is discriminating too and therefore, reaffirms my statement that the FERC is institutionally discriminating on me and other people.

Section B, paragraph 3 further states that I do not allege others outside my protected category that were referred for such vacancies, but I provided a discriminating picture of the new OEP hires and identified exactly other people who were referred to such vacancies and broadly explained my discrimination case for acceptance of the issues. Therefore, I object to this statement

Section B, paragraph 3 then stated that my broad sweeping allegations of discrimination on behalf of others fail to explain how I have "suffered direct and personal deprivation at the hands of my employer," but this statement identifies that the FERC clearly must not have read my EEO complaint because I identify specific instances where I relate to the discriminating issues that I identify under this category of broad sweeping allegations. Specifically, to argue this fact with examples, I stated how Patricia Gillis is the only black woman in my branch and she has no bachelors degree but has been considered equal and this helps to keep black people in lower non-management positions; there are no black men in my branch or division; Kelly Houff was promoted to Engineering Resources Branch Chief without a Professional Engineering License; all the managers in OEP are white; there are no women directors but the accepted promotion methods is to make a white deputy director in my office;  and I have been forced to get my Master's degree thus far, work towards getting my PE license, and on multiple occasions have noticed

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **23** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

how the other people in my complaint are overlooked because white people are viewed as better for
management and promotion potential/positions.

Additionally, if Section B, paragraph 4 even needs to be reviewed after all of the false statements to
dismiss everything which I have identified above is required to make a decision in my favor, the FERC
states that I have failed to allege any discriminatory agency policy which links my constant complaint to
the allegations I make on behalf of others, but if the FERC agency as a whole is seasoning and training
blacks and other people to be lower and not equal with any management positions, not promoted or
hired, and not educatedly hired then the entire institution has clearly learned how to manipulate the EEO
process to continue to discriminate on me and other people.

Section B, paragraph 5 states that the claim for which I sought counseling concerned my conversion to a
career employee and a long litany of allegations appears to concern an alleged longer pattern of
discrimination against me, but Doretha Geter (the FERC EEO Senior Technical Expert) advised me on the
long litany of alleged discrimination process to take to resolve the problems when my initial long pattern
of discrimination began; and to be direct, I feel this statement is an all out attempt to have the
discrimination matters dismissed without getting to the bottom of the problem and fix the entire
institutional discrimination.  This is expected though from the FERC whom is under review for appeal to all
of these major issues of complaint.

The last sentence of the letter states that I will not be subjected to harassment, intimidation, coercion or
reprisal for having filed this complaint, but I have already been treated with these three to four items and
have been documenting the state of the situations in a composition book, for review if and possibly when
this EEO discrimination case really starts to be treated as a serious matter that needs to be resolved.

**_December 11, 2013, Marcus Gaskins Affidavit_**
See Report of Investigation

**_December 15, 2013, Supplement to Appeal on Denied Issues_**
See FERC Exhibits

**_December 17, 2013, Charles Cover Rebuttal to Affidavit_**
See Report of Investigation

**_December 20, 2013, Michael Mrozowski Rebuttal to Affidavit_**
See Report of Investigation

**_January 2, 2014, Chrystal Martin Rebuttal to Affidavit_**
See Report of Investigation

**_January 14, 2014, Sydney Chapman Rebuttal to Affidavit_**
See Report of Investigation

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission **24** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

## *February 6, 2014, Request for EEOC Administrative Hearing Letter Faxed*

Marcus Gaskins
PO Box 2644, NE
Washington, DC 20013

February 6, 2014

U.S. Equal Employment Opportunity Commission
Washington Field Office
131 M Street, NE, Suite 4NW02F
Washington, DC 20507

**Subject:**     **Marcus Gaskins' Request for a Hearing before an EEOC Administrative Judge**

My name is Marcus Gaskins and I am currently in discrimination complaint proceedings at the Federal Energy
Regulatory Commission (EEOC2013MCG001). My investigative report was emailed to me on February 5, 2014.
Investigator, Lisa Kleine, states that she is neutral in the investigation of my case. However, many items that I
emphasized in my interview were missing in my affidavit, which needed to be revised, and my rebuttals were not
properly accounted for in the documentation of the investigative report. The investigator, whom I take to be a white
Caucasian woman, took a more supportive stance towards the Federal Energy Regulatory Commission in her
investigative report, by incorrectly recording years (Investigative Report Section V., Summary Paragraph 5,
December 2011 error of 2012) as accurate information, then by mixing up Charles Cover and Chrystal Martin's
testimonies with "moving my graduation date" comments, and also by misconstruing the information of my case to
benefit the Federal Energy Regulatory Commission. In addition to the reasons provided above, my discrimination
case has been guided in the direction of not being properly acknowledged for right to file a discrimination
complaint, not properly accepted as a discrimination complaint, not properly investigated as a current discrimination
issue, and the Federal Energy Regulatory Commission will not properly acknowledge that discrimination has taken
place here. Even though I was hired by the Equal Employment Opportunity Advisor at the Federal Energy
Regulatory Commission, who is Madeline Lewis (not Doretha Geter like the investigative report inaccurately
states), and the Executive Director acknowledged that my discrimination case is serious, the EEO office at FERC
and the Executive Director appear as though their primary concerns are for protection of the agency, rather than
properly addressing the multiple concerns I have brought forth in my almost two and a half years working at the
Federal Energy Regulatory Commission. The Federal Energy Regulatory Commission agency hired Lisa Kleine to
investigate my case because she was biased towards this agency and would not act as the neutral entity she claims
she is. Therefore, I am left with no other options, other than the request for an official Equal Employment
Opportunity Commission hearing, which will address current concerns, to include my initial discrimination
complaint with more than 300 pages of attachments, my discrimination complaints appeal of the denied issues with
roughly 400-500 pages of attachments and information, and all other relevant investigative information. Please
ensure the above referenced attachments are included in any documentation provided to you for my case here. If I
am ahead of my time with all of this information, please take this as a premature motion to amend the issues that are
under specific review at this time, and factor in the main discrimination issues that are important to the preservation
of the EEOC regulations that are being disregarded, removed, disrespected, and undermined at this Federal Energy
Regulatory Commission agency. I may not be a bar exam passed lawyer, but the Federal Energy Regulatory
Commission's second mistake was when they too undermined my capabilities and the severity of this discrimination
complaint, as I have detailed in my documentation provided to the EEOC for Docket # 0120140188, Hearing Docket
No. 570-2014-00232X, and Agency Number EEOC2013MCG001. All of the information that I have related to this
case is available electronically. Please provide me with the Administrative Judge's email address and telephone
number to try to facilitate the availability of information without missing information and without prejudice.

Respectfully

Marcus C. Gaskins

(202)630-7837

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission        **25 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

### *February 28, 2014, Hand-Delivered Filing and Courtesy Electronic Copy Delivered to EEOC (Part of Tab A-8 Below and Tab A-9 are included as Exhibits to prove the facts of this case, but the entire filing can be provided upon request)*

SUBJECT: Current Pending EEOC Case No. 570-2014-00510X

Updates to Case

Attorney fees: currently, I have consulted with an attorney for two hours and request that attorney fees be added to my list of things that I want. This will mean the past, current, and present attorney fees that were paid and not paid yet for all of the work done related to my case.

Request for information not provided in investigator report. So far, tab G-10 of the current investigative report conducted by Lisa Kleine provides an incomplete list of all of the Pathways students in the program and only reports on a small portion of the Pathways students. After consultation with a lawyer, I learned that Equal Employment Opportunity compares me with all of the students within the Cooperative Education Program Agreement before the pathways program was signed in December 2011 and became effective in July 2012. This includes the Recent Graduates component of the Pathways Program, the Internship Students of the Pathways Program (both with a Not To Exceed date and without a Not To Exceed date), and the Presidential Appointee Pathways Program participants.

Also, I request that the agreements for all of the students in the Cooperative Education Program Agreement student program and all of the agreements for all of the Pathways Program participants be provided. As well as all of these students job position, degree received, undergraduate/graduate Student Program Participant, race, color, gender/sex, age, and nationality be provided along with their start grade, start date, promotion grade, promotion date, conversion status, program end date, and whether they are current FERC employees.

Additionally, Tab A-10 supports this letters supplemental documentation for my EEOC Case with the comparison of me to other student participants at FERC before and after the Pathways Program was implements, specifically how a White/Caucasian Man named Ryan Stertz was brought into the program on May 21, 2012, after he graduated on May 11, 2012, from University of Arizona, and then after only 320 hours of work, he was converted to a permanent career-conditional position and promoted. However, I graduated on May 21, 2011, and started working at FERC on August 15, 2011, after going through six months of application difficulties with the EEO Advisor's help, Madeline Lewis got me in through Affirmative Action. With this being documented, there was discrimination on me conducted through the denial of Equal Employment Opportunity when I was not recognized as obtaining a Bachelor's degree as the requirement for me completing 320-640 work hours for conversion as a Black/African American Male, white the White/Caucasian Male Ryan Stertz was recognized as obtaining a Bachelor's degree as the requirement for him completing 320-640 hours of work for conversion. Then, there is the discrimination on me conducted through the improper placement of me within the Pathways Program, given that since I graduated on Mary 21, 2011, I was a recent graduate and the program was implementing the Recent Graduates component of the Pathways Program. The lawyer I consulted with states that the discrimination on me falls under Special Emphasis and Special Impact categories of discrimination under Title 5. As such, I am entitled to attorney's fees, compensatory damages (all inclusive of pain an suffering, loss of enjoyment of life, stress, weight gain, self-esteem damages, employment perspective damaging, etc.), acknowledgement of fault from FERC, permanent position placement, back pay, forward pay, as well as relief. I was eligible for the recent graduate Pathways Program component for the allotted two years from May 21, 2011 to May 21, 2013.

On February 24, 2014, I spoke with the Executive Director at FERC, Anton Porter, and provided him with a list of three requests to further my EEOC case. Tab A-11 will provide the list of three requests provided to the Executive Director. In this meeting, I discussed the inequalities of comparing me and Ryan Stertz, the discrepancies of the investigative report, and the incomplete list of the Pathways students provided to the investigator. I also asked why these clear inequalities could not be resolved in settlement and current reprisal/retaliation is being allowed. Mr. Porter said he would have to discuss matters with the EEO Advisor Madeline Lewis and get back to me, but he still focuses on that he wants an accurate investigative report and that I have filed an administrative hearing at the EEOC. In this meeting, Mr. Porter said he would have to look into the Special Emphasis and Special impact of my case and asked me "who specifically said I will not be converted?" A formal answer is Charles Cover, in his affidavit, stated I am ineligible for conversion, and that he is not interested in a Civil Engineer working here; even

though we regulate Civil Engineering Municipal and Non-Municipal Entities in the FERC Office of Energy Projects, Division of Hydropower Administration and Compliance, Project Review Branch, and Charles Cover did not acknowledge that I have 120 days after May 10, 2014, my anticipated Master in CIVIL Engineering from Howard University, to continue participating in this discriminating excepted appointment. Also, Michael Mrozowski stated I have to find my own job after the program ends and I will not be converted; meaning I have to apply to positions potentially competitively or non-competitively (because he didn't know for sure about the Pathways Program) if positions are available to apply to, within 120 days to get a permanent position with FERC.

In conclusion, these documents provided give an overview of the information I have researched to support my case with only the help of a lawyer consultation. Please keep me up to date on any new developments for my EEOC Case.

**Descriptions and attachments for this supplemental letter: (all attachments included in different Exhibits)**

### Tab A-1
Proof that the list of Pathway students in the current investigator report, tab G-10, does not include any of the 2012 Summer Pathways Students. Specifically, pages 5-6 of my rebuttal to Michael Mrosowski's affidavit in the investigators report; rebuttal to Question 10 lists Summer 2012 students not included.

### Tab A-2
Proof of Ryan Stertz being a Student Intern in 2012 and a Eller Top 100 Graduating Senior in May of 2012; Ryan Stertz's Linked-In Profile as of February 21, 2014. (See the bottom of page 1)

### Tab A-3
Proof of Ryan Stertz being a Eller Top 100 Graduating Senior on May 2, 2012; Program of the University of Arizona Eller College of Management "A Night with the Stars" Ceremony
<http://www.eller.arizona.edu/buzz/2012/may/Eller_NightwiththeStars_2012.pdf>
(See page four for a list of the Eller 100 Top Graduating Seniors and Ryan Stertz's name there; also page 2 lists Ryan Stertz with an outstanding Senior Award);

Also this tab provides the University of Arizona's Spring 2012 academic calendar. (See page 3 Graduation date is May 111, 2012 to May 12, 2012)

### Tab A-4
Proof of reprisal described in email with pay stub attachment support increasing retaliation.

### Tab A-5
A June-July 2013 Recent Graduate position posting which hires a recent graduate under the Pathways Program at the GS-9 with Promotion Potential to the GS-13 and conversion potential after one year within the program.

### Tab A-6
A February-March 2014, Pathways Program student position for a GS-7 Economist position, with promotion potential to the GS-9.

### Tab A-7
A February-March 2014, Pathways Program student position for a GS-7 Energy Industry Analyst with promotion potential to the GS-9.

### Tab A-8
Marcus Gaskins Assignments Completed and Pending as of 6-13-2013

### Tab A-9
Comparison of Branch Employees Assignments Completed from Aug 15, 2011 to February 28, 2014 from a Database. (this database is managed by the employee and either the project description or the comments describes the assignment for the employee). This list provides proof that everybody does the same assignments. The Marcus Gaskins Assignments Completed and Pending as of 6-13-2013 should be considered a supplement to this list.

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission      **27 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

### Tab A-10
Amendment to discrimination complaint to change Graduation Date from Morgan State University; Morgan State
Universities Spring 2011 graduation date was May 21, 2011, therefore, my graduation date is May 21, 2011.

### Tab A-11
List of three requests provided to Anton Porter, and the Ethics people who will be working on this EEOC Case; and
emailed mistreatment by Ethics office regarding my case before I went to speak to the FERC Executive Director.

### February 1, 2015, Application to Amend with filing and with Appeal on denied issues from above and Supplement to Appeal on Denied Issues from Above
SUBJECT:  APPLICATION TO AMEND EEOC CASE NUMBER 570-2014-00510X

I would like to include the following bullets as additional information to include in my amendment to my EEOC
case.  I have experienced or have been:

- Put on admin leave with pay
- Wrongful termination
- Within 120 days after wrongful termination, my position was created
- Not selected for my position and no justification provided
- Received negative references for future positions
- A lawyers' initial review that should be included
- FERC Union representative reviews that should be included
- New job selection but previous steps no longer acceptable
- Graduation from HU but no conversion
- Treatment throughout entire process
- OSC review for advancement complaint not successful
- MSPB appeal to be filed
- Loss of apartment, health insurance, bad credit, and many more financial grievances incurred
- Unemployment for 6 months while applying to jobs
- Inability to complete taxes due to unemployment
- Inability to pay rent due to wrongful termination
- Inability to obtain new position due to negative references from supervisor
- Inability to communicate with EEO office at FERC due to animosity of my EEOC claim
- Inability to provide person to contacrt for OSC discovery
- Inability to investigate complaints on inaccuracy of EEO outside investigators report
- Illegitimate claim that I was conducting misconduct
- Disrespectful treatment of me during dismissal for misconduct investigation after OSC complaint was filed
- Failed attempt to reinstate me (attempt deferred to supervisor leisure in a letter which states that I've been on leave and should stay on leave until I graduate
- Direct supervisor misuse of power stating that my 2.5 years of engineer in training will be discounted in some way due to inaccurate references to my work with engineering regulated entities
- Inaccurate background check completed which causes my background check on newly selected position to be stalled as an entry on duty until 90-120 days investigation is completed by OPM
- Inability to be able to contact Division chief for reference or any subsequent information
- Additional inclusion of medical documentation regarding affects of the discrimination I have incurred to my health and weight
- The constant worry of what my complaint may have on my future job hires and success due to the inability to receive proper treatment as a protected class under this cases parameters
- The inability of a lawyer to take on a case against the Federal Energy Regulatory Commission and no public assistance available
- The realization that my EEOC Appeal should address both advancement within the program and the conversion issues I experienced

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **28** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- About the discrimination at FERC, the comments from the EEO counselor to find a position at another place should be included
- I am happy to provide further documentation with specifics on all of these identified points

### *February 1, 2015 Application to Amend EEOC Case Number 570-2014-00510X*
SUBJUCT:  APPLICATION TO AMEND EEOC CASE NUMBER 570-2014-00510X

I would like to include the following supportive documentation as additional information to include in my amendment to my EEOC case.  Supportive documentation for the following:

- I have experienced wrongful termination.

  The Cooperative Education program agreement and everyone I was initially hired under informed me the I have 120 days after I graduate to figure out what will happen with my employment at FERC or my ability to be non-competitively hired in the federal government.  Then, I was told by Michael Mrosowski that I would be allowed 120 days after graduation to find a position or my position would end if I do not accept FERC's non-competitively conversion.  However, this did not happen in that fashion.  My position was terminated right after I graduated, leaving me no time to plan to get any other type of job.  I have been told by a woman named Stephanie at the OPM Pathways Program Office that I was supposed to be kept on for 120 days after I graduated and I should file a wrongful termination case against the FERC agency as well.

- I have experienced within 120 days after wrongful termination, my position was created
  **Job Title:**Civil Engineer
  **Department:**Department Of Energy
  **Agency:**Federal Energy Regulatory Commission (FERC)
  **Job Announcement Number:**FERC-DE-2014-0167
  **SALARY RANGE:** $54,570.00 to $67,787.00 / Per Year
  **OPEN PERIOD:** Thursday, October 2, 2014 to Friday, October 17, 2014

- I have been not selected for my position and no justification provided
I have just received notification today that I have not been referred for the Civil Engineer position at FERC.  No reason has been provided as to why I have not been referred.

- Received negative references for future positions
Email correspondence as supportive documentation:

---

**Marcus Gaskins** <mgaskins1@gmail.com>                                                    Sat, Jun 28, 2014 at 11:45 AM
To: Alyssa Asonye <alyssa.asonye@ferc.gov>, Anton Porter <anton.porter@ferc.gov>, Madeline Lewis <madeline.lewis@ferc.gov>, Jeff Wright <jeff.wright@ferc.gov>, edward.abrahms@ferc.gov, Sidney Chapman <sidney.chapman@ferc.gov>, Mark Hershfield <mark.hershfield@ferc.gov>, Chrystal Martin <chrystal.martin@ferc.gov>, Charles Cover <charles.cover@ferc.gov>
Cc: Marcus C Gaskins <marcus.gaskins@bison.howard.edu>, Marcus Gaskins <mgaskins1@gmail.com>

Ms. Asonye, et. al.:
I have spoken to Charles Cover on multiple occasions regarding the multiple disadvantages that he has provided towards me, which leads to discrimination (or is considered discrimination).  The email below sent on June 27, 2014, at 10:04 in the morning, does not acknowledge how many hours that will be certified for my to the Maryland Board of Professional Engineers.  It instead discusses Charles Cover plans to decertify his calculated 2.58 hours of work that he says I did.

I am a second generation Civil Engineer, my brother is a Civil Engineer, and my father is a Licensed Land Surveyor/Engineer who has been certified for over thirty years.  When I spoke to my father about this matter, his was shocked to say the least for the following reasons which I spoke to Charles Cover about already and

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **29** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

may have to discuss with the Maryland Board of Professional Engineers too:

1.) Administrative work is credible as engineer in training work

2.) At the Commission in the Division of Hydropower Administration and Compliance, we regulate engineering
entities, which requires extensions of time on start of construction and many other engineering related issues.
My dad specifically rendered a question for Charles Cover: "Does he think engineering companies [/entities]
can be regulated by people who aren't engineers?"

3.) All of the work I did was mostly directly under Charles Cover, or another Civil Engineer Branch Chief, such as
William Guey-Lee (Billy; retired now) and Kelly. Any other work done with other branch chiefs was guided
through Charles Cover. I did everything Charles Cover told me to do for the 2-3 years I worked at the agency.
4.) Charles Cover has not notated the exact hours he will certify for me, and his email signifies that his
perspective on my work may not even be considered certifiable.

5.) Charles Cover states he does not need to provide a certification letter, but discusses providing de-
certification notes and comments that he will send directly to the board on my behalf.

There are other options to provided in the engineering document I sent which will allow me to be certified for
all of my hours, but I am not sure whether this will work to my advantage. I need an exact number of hours
which will be certified for me, since I am being stripped of my work experience now. This should not be a
mystery.

Also, I consulted with a lawyer about my discrimination concerns, and the lawyer informed me that my case
falls under the following two categories of discrimination:

## A. Disparate Treatment Theory (Intentional Discrimination)

1.    Failure to convert you to a career conditional employee, at the discretion of the agency, while other
students trainees outside of your protected class have been.

## B. Disparate Impact Theory (No Intent to Discriminate, but a disproportionate impact on your protected categories)

2.    Denial of a step increase within the student trainee program.

3.    Denial of a grade level promotion within the student trainee program.

4.    Failure to place you in the recent graduates program, not when the program became effective on
July 11, 2012, but when you found out you were not in the program.

See http://www.eeoc.gov/eeoc/meetings/2-16-11/urban.cfm:

A disparate impact violation is established when an employer is shown to have used a specific
employment practice, neutral on its face but causing a substantial adverse impact on a protected group,
and which cannot be justified as serving a legitimate business goal of the employer.[2] No proof of
intentional discrimination is necessary. Forty years ago, the Supreme Court first recognized that Title VII
plaintiffs may be able to sustain a viable employment discrimination claim without alleging or proving
discriminatory intent in the case *Griggs v. Duke Power*.[3] In Griggs, the Supreme Court held that the
employer's standardized testing requirement prevented a disproportionate number of African-American
employees from being hired by, and advancing to higher-paying departments within, the company.
Two decades later, in 1991, Congress codified the requirements of the "disparate impact" claim Griggs
had recognized.[4] That provision at 42 U.S.C. § 2000e-2(k) states:

(1)(A) An unlawful employment practice based on disparate impact is established under this subchapter
only if-

(i) a complaining party demonstrates that a respondent uses a particular employment practice that
causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent
fails to demonstrate that the challenged practice is job related for the position in question and consistent
with business necessity . . . .

Thus, a plaintiff establishes a *prima facie* disparate impact claim by showing that the employer "uses a
particular employment practice that causes a disparate impact" on one of the prohibited bases.[5]

As mentioned, an employer may defend against liability by demonstrating that the practice is "'job
related for the position in question and consistent with business necessity.'"[6] Even if the employer meets

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **30 | 5 0**
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

that burden, however, a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs.[7] **This is where discretion comes in.**
Proof is another issue. As the Commission is well aware, in disparate impact cases, there is no evidence of intent to discriminate. Thus, as discussed, in order to prove a prima facie case of disparate impact, the burden is on the complaining party to show a particular employment practice, which cannot be justified by business necessity, has a disparate impact on a protected class.[8] The Supreme Court has explained[9]: Plaintiff's burden in establishing a *prima facie* case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged ... [Then], causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group ... [Moreover], statistical disparities must be sufficiently substantial that they raise such an inference of causation. The Commission has taken the position that evidence of adverse impact exists when the selection rate for any race, sex, or ethnic group is less than four-fifths (80 percent) of the rate for the group with the highest rate.[10] In other words, the selection rate for Hispanic applicants, for example, would need to be less than 80% of the selection rate for white applicants to establish disparate impact.
**Getting that statistical evidence for the pool of student trainees will be important.**

During my work experiences, I noticed that many assignments were taken away from me and given to other Civil Engineers in the Project Review Branch, because "they had specialized experience in the matters." I believe this falls under special emphasis categories of discrimination and the fact that I was not advanced or treated equal while at the Commission, as a protected class, is disrespectful to me and any other people that have been treated this way. I recommend Charles Cover be removed as a student trainee for Civil Engineers due to his role in this discrimination fight I have not received any aid with. I was the only black male in the whole division; I worked at a work station while everyone else received offices; I was constantly told that I'm not equal to everybody else; I trained employees who came in after me and they were advanced beyond me; among many other things.
This matter is not a simple one which can be discarded in someones trash box after one email. That is why it would be easier to receive documentation from Charles Cover to send to the board. He will definitely not be the only Civil Engineer that I have worked under, and this is another disadvantage that I face (one where I could have had 3 whole years of Civil Engineer Training but have been removed from my position in a soft exit fashion--blackballed).
Respectfully,

Marcus Gaskins

On Fri, Jun 27, 2014 at 10:04 AM, Charles Cover <charles.cover@ferc.gov> wrote:
Hello Marcus.
I have received your e-mails to HR personnel and others in the Commission regarding your issues. I am responding to your request for documentation of your work experience as part of the application process to become a registered professional engineer in Maryland.
I am well aware of the requirements for documenting experience, and have had several conversations with the staff at the Department of Labor, Licensing and Regulation. They told me that "YOU" must initiate completion of the documents. The information I am providing to you in this e-mail is not my obligation or responsibility. It is something I would expect you to have researched and followed instructions before making allegations against me. Nevertheless, in an effort to set you on the right path towards obtaining your PE license I have taken my time, and that of the Commission, to speak with the Maryland PE staff, read through the application documents and forms, and provide this information to you. I understand the instructions and would hope you will after reading them. If you have problems in following these instructions DO NOT CALL ME! you should call the Board and speak with Ms Ruby Courtney at 410-230-6260.
The steps below will allow me to complete the RPE form and forward it to the Board:

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission        **31** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

1.    Read the instructions for Section III , item 1 on page 14 of the attachment you sent.

2.    Complete sections 1 and 3 of the RPE form (also known as Form 2 on page 3 of the attachment)

3.    Send the RPE to me so I can complete sections 3 and 4. I will forward the form to the Board as per the
instructions on the RPE.

I caution you in completing your parts of the RPE form. I have detailed records of your time and attendance, as
well as professional and non-professional assignments you worked on during your 2.58 years spent as an intern
with the Commission. I will be reporting to the PE Board the hours you spent on engineering assignments. I
take my obligation to accurately complete the endorsement sections of the RPE form very seriously and will
use the following definition, taken from the Code of Maryland Regulations (*Md. BUSINESS OCCUPATIONS AND
PROFESSIONS Code Ann. § 14-101*), as a guide in completing the form as it relates to the types of engineering
work you performed. You should read the definition carefully as section 3 B of the RPE makes reference to it.
§ 14-101. Definitions

(j) Practice engineering. --

(1) "Practice engineering" means to provide any service or creative work the performance of which requires
education, training, and experience in the application of: (i) special knowledge of the mathematical, physical,
and engineering sciences; and (ii) the principles and methods of engineering analysis and design.

(2) In regard to a building or other structure, machine, equipment, process, works, system, project, or public
or private utility, "practice engineering" includes:  (i) consultation; (ii) design;  (iii) evaluation; (iv) inspection of
construction to ensure compliance with specifications and drawings; (v) investigation; (vi) planning;
and (vii) design coordination.

(3) "Practice engineering" does not include the exclusive and sole performance of nontechnical management
activities.

Many of the assignments you worked on as an intern were non-engineering. For example, during your
internship processed a total of 64 requests for extensions of time to comply with license article or order
requirements. In addition, your assignments as an intern included conducting research on various license
requirements and project types. I consider this work as basic research and information gathering. The time
spent you spent on these types of assignments will not be counted as professional experience since they do not
fit with the definition above. As I explained to you throughout your internship with the Commission, I
encouraged you seek specific engineering assignments from other branch chiefs in DHAC (that would be Billy
and Kelly), and to seek permanent employment with other OEP divisions such as Dam Safety, Gas, or Pipeline
Certificates that involve assignments more commensurate with engineering practice.

In summary, complete sections 1 and 3 the RPE and send to me.

Finally, as I highlighted below in your June 26 e-mail, you indicate that I may be required to complete other
portions of the exam. I assume you mean complete other portions of your application for licensure, for I am
not taking the exam as you suggest. Also, you mention a letter of certification. This is not correct. I only need to
complete the RPE to document your work experience. Upon receipt of the RPE with sections 1 and 3 completed
by you, I will do my part and expeditiously complete the endorser sections of RPE form and forward to the
State Board for Professional Engineers.

Regards and the best of luck to you.

**C. Kirk Cover, P.E.**
FERC, Office of Energy Projects
202-502-8832
**From:** Marcus Gaskins [mailto:mgaskins1@gmail.com]
**Sent:** Thursday, June 26, 2014 4:32 PM
**To:** Alyssa Asonye
**Cc:** Anton Porter; Madeline Lewis; Jeff Wright; edward.abrahms@ferc.gov; Sidney Chapman; Mark Hershfield;
Chrystal Martin; Charles Cover; Marcus C Gaskins
**Subject:** Re: Leave and Earnings Statements

Ms. Asonye:
The attached document is what I will be using to submit to sit for my exam.  I still have other paperwork to
complete but on page 13, explanation of what will be necessary from Charles Cover is described.  I should be

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission          **32** | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

able to get by with only a letter of certification that I worked under him and an accurate amount of hours that I
worked under him. I was full-time for 2-3 years and worked 32.5 hours a week for the first 2-3 months of the
2-3 years. There may be other portions of the exam which Charles Cover would need to complete, among
other Professional Engineers I have worked for, and this may be more that a one stop request. Let me know if
you have success with getting the letter of certification.

Marcus Gaskins

On Thu, Jun 26, 2014 at 3:40 PM, Alyssa Asonye <alyssa.asonye@ferc.gov> wrote:
Good afternoon Mr. Gaskins,

Taxes have been deducted from your lump sum payout as you will see in the attachment that I sent to you.
Please review the information. The deductions are accurate, so there is nothing to correct.
If there is a form or letter that needs to be completed by FERC as part of your PE license application, please
forward me the document or instructions on what needs to be included in a letter so I can assist in getting this
information for you.

Thank you
Alyssa Asonye
Director, Human Resources Division
Chief Human Capital Office
Office of the Executive Director
Federal Energy Regulatory Commission
Phone: (202) 502-6300

On Thu, Jun 26, 2014 at 3:29 PM, Marcus Gaskins <mgaskins1@gmail.com> wrote:
Ms. Asonye:

I believe 12 hours times the $21.79 per hour as a GS-7 step 3 (with two years work experiences at the GS-7 and
three years of graduate school) equals out to $261.48. If there was not any taxes taken out, this must be
corrected.

I have been informed by the EEOC ALJ of the day that the Merit Systems Protection Board will deal with your
agencies wrong treatment on my termination and if not, then I should amend my EEOC case to include this
wrongful termination.

Also, if my hours will not be provided in some form of letter to the Maryland Board of Professional Engineers,
similar to how the division director and former branch chief outlined my work experiences, then I may have
difficulty obtaining any documentation from Charles Cover.

It is unfortunate that this agency has a normal practice of screwing its successful people out of job
opportunities and futures after completing all of the requirements in full.
Marcus Gaskins

On Thu, Jun 26, 2014 at 2:33 PM, Alyssa Asonye <alyssa.asonye@ferc.gov> wrote:
Marcus,

Here is an explanation of your leave and earnings statements:

- 5/13/14 - Payment for pay period 10: Because you receive your pay via direct deposit, your pay in the
  amount of $1,364.88 for 80 hours worked was deposited into your account on May 9th. Therefore,
  there was no error in paying you pay period 10 (April 20th - May 3rd).
- 5/27/14 - Payment for pay period 11: Your direct deposit for pay period 11 was made on May 23rd.
  The amount deposited was $788.97 for 48 hours of work. Your separation was effective on 5/12/14.
  Since you did not work the entire pay period (May 4th - May 17th), you received pay for 48 hours, not
  80 hours. There was no error in paying you for pay period 11.

Statement of Facts for Marcus Gaskins v. Federal Energy Regulatory Commission                                33 | 5 0
(FERC Agency Case No. EEO-2013-MCG-001, EEOC Washington Field Office Docket Nos. 0120140188, 0120152670, and
0520170021, EEOC Request for Hearing Case No. 570-2014-00510X, Merit Systems Protection Board Docket
No. DC-3443-14-0494-I-1, U.S. Office of Special Counsel File No. MA-14-1855, and Merit Systems Protection Board Docket
No. DC-1221-15-0430-W-1)

- 6/11/14 - This is not a valid pay date. However, since you were off the rolls as of May 12th, you are to
  receive no more pay from FERC. You were not employed by FERC for any part of pay period 12 (May
  18th - May 31st).
- 6/20/14 - You received a payment of $241.48 as payout of your lump sum annual leave for 12 hours of
  annual leave.

I included a copy of your leave and earnings statement in the email I sent to you on May 21st. Please review
the attachment to that email. As part of this email, I have attached your final leave and earnings statement for
pay period 11 as well as a leave and earnings statement for your lump sum annual leave pay out which you
received (indicated as Pay Period 13).

FERC is not required to employ a student for 120 days after graduation. The 120-day period allows an agency to
keep a student on the rolls 120 days after graduation if it so chooses. On or before the end of the 120-day
period, the agency may decide to convert a student to a permanent position. The agency is not required to
convert a student to a permanent position.

As for your PE license, I am not experienced in this process and am not able to advise you. However, you should
work directly with the State of Maryland. Here is some information along with links to the necessary sites:

- Applying for Certificate or License: http://www.dllr.state.md.us/license/pe/peapply.shtml
- If you are applying for your license under Subsection 14-305(b) of Maryland's professional licensing
  regulations, the forms, fees and other information can be found here:
  http://www.dllr.state.md.us/license/pe/peaff.shtml. There is a specific link for first time applicants on
  this site which should be of use to you.

Thank you.

Alyssa Asonye
Director, Human Resources Division
Chief Human Capital Office
Office of the Executive Director
Federal Energy Regulatory Commission
Phone: (202) 502-6300

On Mon, Jun 23, 2014 at 2:10 PM, Marcus Gaskins <mgaskins1@gmail.com> wrote:
Ms. Asonye, et. al.,

**I have not yet received payment for the pay stub # 10** you attached to your email below.  The pay date was
May 13, 2014.  I should've received this pay on May 23, 2014.  However, I instead received $788.97, which was
scheduled to be the amount of money due to be paid on pay period 11 for June 13, 2014, which I was not even
paid anything on this date.  However, you did provide this pay stub to me in a subsequent email with my 2013
W-2.  Then, on June 20, 2014, I received a payment of $241.48, which is not a normal scheduled pay date, since
June 13, 2014 should have been the pay date for my pay period 11 pay.  I never received the pay sub which
accounts for the May 12, 2014 termination date pay stub # 12 that I was paid correctly.  A overall review of the
above information is as follows:

PAID CORRECTLY on 4/25/2014 and 5/9/2014
Pay Date 5/13/2014--Pay Stub # 10-->NOT PAID on 5/23/2014
Pay Date 5/27/2014--Pay Stub # 11-->PAID on 5/23/2014 IN ERROR/ MUST BE ADJUSTED TO 6/07/2014
Pay Date 6/11/2014--Pay Stub # 12-->PAID on 6/20/2014 IN ERROR/ MUST BE ADJUSTED TO 6/21/2014/
MUST PROVIDE PAY STUB FOR THIS PAY PERIOD!

Therefore, **I am still owed $1,364.88 at least for Pay Stub # 10**, and **the Pay Stub for the # 12 pay period**.

On another note. **I need to file wrongful termination documentation**.  Who do I need to talk to to complete